**In the Matter of Chidi EGWIM and Anita Egwim, Debtors.**

**No. A–01–71246–PWB.**

United States Bankruptcy Court,
N.D. Georgia,
Atlanta Division.

March 31, 2003.

## MEMORANDUM OPINION

PAUL W. BONAPFEL, Bankruptcy Judge.

This Opinion considers three issues with regard to a lawyer's responsibilities in representing an individual in a chapter 7 case:

1. May a lawyer limit the scope of representation of a chapter 7 debtor by excluding certain matters?

2. Regardless of the arrangements between the debtor and the lawyer, what are the lawyer's duties until the Court grants permission to withdraw?

3. Under what circumstances does the Court grant leave to withdraw when the reason is the debtor's payment of attorney's fees?

Because it is important that lawyers representing chapter 7 debtors in this Court understand the Court's expectations with regard to their professional responsibilities, this Opinion discusses these issues at length. The Court's conclusions are summarized as follows. First, the general rule is that, absent special circumstances, an attorney representing a chapter 7 debtor may not limit the scope of the representation; therefore, the attorney must represent the debtor in all aspects of the bankruptcy case, including any contested matters or adversary proceedings that involve the debtor's interests. Second, regardless of the reason for withdrawal, the lawyer is required to represent the debtor unless and until the attorney withdraws in accordance with Rule 9010–2 of the Local Rules of this Court ("BLR"), which requires leave of Court to withdraw unless the debtor consents.[1] Third, when the reason is payment of fees, leave to withdraw is properly granted only if the attor-

---

1. BLR 9010–2 provides in pertinent part:

(a) Withdrawal Policy. Counsel will not ordinarily be allowed to withdraw after pretrial or at a time when withdrawal will cause a delay in the progress of an adversary proceeding or a contested matter.

(b) Motions to Withdraw. This policy notwithstanding, an attorney who wishes to withdraw in any action or proceeding or to have his or her name stricken as attorney of record for a party shall comply with the following procedure:

(1) The attorney shall submit to the Bankruptcy Clerk in duplicate for filing a motion requesting permission to withdraw.

(2) The motion shall state that the attorney has given the client ten days' prior notice of the attorney's intention to request permission to withdraw and shall specify the manner of

ney demonstrates that, taking into account considerations of fairness, reasonableness, and proper protection of the debtor's rights based on the circumstances of the case, continued representation imposes an unreasonable burden on counsel that justifies withdrawal.

In this case, the Debtors were represented by counsel when they filed their chapter 7 petition, but appeared *pro se* in two proceedings. The first *pro se* appearance was in an adversary proceeding filed by a creditor objecting to their discharge and the dischargeability of its debt; the second was at a hearing on a mortgage lender's motion for relief from the stay at which it appeared that reaffirmation and retention of the property might be appropriate.

The Court *sua sponte* issued an Order for counsel to show cause why sanctions should not be imposed for failure to represent the Debtors. At the hearing, counsel asserted that representation of the Debtors with regard to these matters was not required because the limited scope of counsel's engagement did not include them and Debtors had not paid additional fees for such additional services.

Counsel's approach does not appear to be uncommon; the Court perceives that many lawyers representing chapter 7 debtors in this Court follow similar practices. Because counsel in this case appears to have proceeded in the good faith belief that counsel's conduct was proper and because there has been no showing of any adverse consequences to the Debtors, the Court determined at the hearing that no sanctions or other discipline are appropriate or necessary in this case, and the Court accepted counsel's explanation as a fully satisfactory resolution of the questions raised by the show cause order in the circumstances of this case. Although the Court thus did not require counsel to proceed further and makes no findings or conclusions with regard to counsel's representation in this matter, it is appropriate to explain the requirements of professional conduct for lawyers for chapter 7 debtors that appear to be violated when a represented chapter 7 debtor appears *pro se* in a bankruptcy case or related adversary proceeding and which this Court has the duty to enforce through disgorgement of fees, appropriate sanctions, or other discipline.[2]

such notice. A copy of the notice shall be affixed to the motion.

(3) The attorney shall serve a copy of the motion to withdraw upon opposing counsel, upon the client, and upon the U.S. Trustee, after filing the motion with the Bankruptcy Clerk.

(4) Ten days after filing, the Bankruptcy Clerk shall submit the motion to the judge for action thereon.

Counsel wishing to withdraw from an action or proceeding may be relieved from the requirement to file a motion to withdraw by filing a Certificate of Consent with the Bankruptcy Court that has been signed by the client, the withdrawing attorney, and the substituting attorney, if one has been selected by the client.

2. Under the provisions of 11 U.S.C. § 329 and Rules 2016 and 2017 of the Federal Rules of

Bankruptcy Procedure, the bankruptcy court has the power and obligation to determine the services that an attorney for a debtor must perform in order to be entitled to a reasonable fee. Moreover, courts have the inherent power to regulate the conduct of attorneys who practice before them. *E.g. In re Castorena*, 270 B.R. 504 (Bankr.D.Idaho 2001); *In re Bancroft*, 204 B.R. 548 (Bankr.C.D.Ill.1997). The Bankruptcy Code and Federal Rules of Bankruptcy Procedure establish standards of professional conduct for attorneys for chapter 7 debtors with regard to certain matters. For example, § 524(c)(3) permits a represented debtor to reaffirm certain debts only if, among other things, the debtor's attorney verifies that the agreement represents a fully informed and voluntary agreement by the debtor, that it will impose no undue hardship on the debtor or the debtor's dependents, and

## I. STATEMENT OF FACTS

On August 31, 2001, counsel for Debtors filed a chapter 7 petition on their behalf. Counsel never requested permission to withdraw and thus remained counsel of record for Debtors.

Debtors' schedules of assets and liabilities [3] reflected: a jointly owned residence, encumbered by two mortgages with combined indebtedness of approximately $145,000, the residence's scheduled value; a ten year old unencumbered vehicle with a value of $1,500; a one year old leased vehicle; various personal property of nominal value, substantially less than the available exemption; unpaid state and federal income taxes of approximately $2,000; and about $185,000 of unsecured claims. The unsecured claims included a liability of approximately $71,500 on Debtors' guarantees of a loan made by a bank and guaranteed by the Small Business Administration for equipment purchased for their bagel shop business. Other unsecured claims include $17,000 on a personal guaranty of a business lease, and about $9,000 on guarantees of other business debt; the remaining unsecured claims appear to be a student loan, various personal loans (possibly for money to put into the failing bagel shop business in an effort to keep it going or to pay living expenses because it was producing no income for the Debtors), and other consumer debts.

As required by 11 U.S.C. § 329(a) and Rule 2016(b) of the Federal Rules of Bankruptcy Procedure, counsel filed a disclosure of compensation received in connection with this case. The Rule 2016(b) statement in this case was a published form with boilerplate language describing the terms of representation and payments received or promised and with spaces for counsel to fill in blanks and add additional terms. The Rule 2016 statement states that counsel agreed to accept $475 for representation of the Debtors in the case, of which $240 had been paid prior to the filing of the statement, leaving a balance due of $235 to be paid "prior to or at the 341 hearing."

Paragraphs five and six of the statement recite the following (emphasis in italics, material inserted in the boilerplate form by counsel underlined):

5. In return for the above-disclosed fee, I have agreed to render legal service for *all aspects of the bankruptcy case, including:*

a) Analysis of the debtor's financial situation, and rendering advice and assistance to the debtor(s) in determining whether to file a petition under Title 11, United States Code;

b) Preparation and filing of any petition, schedule, statement of affairs, and other documents required by the court;

c) Representation of the debtor(s) at the meeting of creditors, confirmation hearing and any adjourned hearings thereof;

d) (Other provisions as needed)
   *Debtors have paid $240 of the $475 due for attorney fees. Debtors will*

---

that the attorney fully advised the debtor of the legal effect and consequences of the agreement and any default thereunder. An attorney for an individual whose debts are primarily consumer debts must also declare that the attorney has explained the availability of, and the relief available under, all chapters of the Bankruptcy Code. FED. R. BANKR.P. Official Form 1, Exhibit "B".

**3.** FED R. BANKR. P. 1007(b), Official Form 6. The Court's file does not indicate the filing of a statement of financial affairs or the statement of intention required by 11 U.S.C. § 521(2). FED. R. BANKR.P. 1007(b), Official Forms 7, 8.

*pay the balance of attorney fees prior to or at the 341 Hearing.*

6. By agreement with the debtor(s) the above disclosed *fee* does not include the following services:

*Fees include only those services specifically listed. Fees do not include adversary and/or contested matters. Fees include preparation of petition and schedules; attendance at 341 Hearing; reaffirmation and/or surrender agreements as necessary; no other services provided.*

Pursuant to the Federal Rules of Bankruptcy Procedure, a § 341 meeting was scheduled for October 11, 2001, and December 10, 2001 was fixed as the last day for the filing of complaints objecting to discharge or to except certain debts from discharge. The § 341 meeting was held on October 11, 2001, as scheduled. On that same day, the chapter 7 trustee filed a No Distribution Report, indicating that there were no assets available for distribution to creditors.

On December 27, 2001—17 days after the expiration of the December 10 deadline—the bank filed an adversary proceeding objecting to the discharge of the Debtors and, alternatively, contending that the debt owed to the bank was excepted from discharge. Counsel for Debtors was served with the summons and complaint but did not file an answer on their behalf. In the Debtors' untimely filed *pro se* response, Debtors stated that they "were unable to retain an attorney," and that they filed their answer late "due to a misunderstanding about existing legal representation."

On April 17, 2002, the Court held a hearing in the adversary proceeding on the bank's request for entry of default judgment and for the bank to show cause why its complaint should not be dismissed due to its untimely filing[4] and failure to set forth a statutory basis for the relief requested. Debtors' counsel was served with notice of this hearing but did not appear. Proceeding *pro se*, Debtors informed the Court that their counsel had told them that counsel represented them in the main case only, and not in the adversary proceeding. The adversary proceeding was eventually dismissed; consequently, the absence of legal counsel in the adversary proceeding did not prejudice Debtors' substantive rights.

On September 25, 2002, the Court held a hearing on the motion of one of the mortgage lenders for relief from the stay. Although served with notice of the hearing, counsel for Debtors did not attend this hearing. Debtors, however, attended, and indicated that they desired to retain their residence. In view of the apparent interest of the lender and Debtors in discussing resolution of their issues through an agreement, the Court deferred ruling on the lender's motion for relief from stay. Thus, at least through the time of this hearing, the absence of representation did not result in a lifting of the stay that would have permitted the lender to foreclose.

The issue with regard to the stay motion is not whether Debtors had legal or factual bases for opposing it. As debtors in a chapter 7 case where the trustee had already filed a no distribution report indicating that the estate had no interest in the residence, Debtors probably had no grounds to contest the request for relief from stay. Nevertheless, Debtors had an interest in retaining their residence, an objective which many debtors may achieve

4. A complaint objecting to discharge or seeking the exception of debts from discharge subject to 11 U.S.C. § 523(c) must be filed within 60 days after the date first set for the § 341 meeting, FED. R. BANKR.P. 4004(a), 4007(c).

in circumstances such as these. Relieved of the burden of their unsecured debt, many consumer debtors are able to negotiate reaffirmation agreements with their home lenders to keep their residence by continuing to make their monthly payments.

Consumer debtors who are represented, of course, conduct those negotiations through counsel, as do lenders who have lawyers in the bankruptcy case. Indeed, ethical rules prohibit counsel for lenders from negotiating reaffirmation agreements directly with represented debtors without the attorney's consent.[5] Moreover, a represented debtor cannot reaffirm a debt unless the debtor's attorney provides the declaration or affidavit required under 11 U.S.C. § 524(c)(3).

Thus, even if Debtors had no basis to oppose relief from stay, they needed to do something if they wanted to retain their residence, and represented debtors ordinarily turn to their counsel for help in doing it. Represented debtors may experience particular frustration when an attorney declines representation in such matters because the lender's attorneys may refuse to negotiate due to the fact that the debtors are represented by counsel.

The Court *sua sponte* issued an Order requiring counsel for Debtors to show cause why sanctions should not be imposed for counsel's failure to appear and represent Debtors in these proceedings. In response, counsel for Debtors asserted that sanctions were not appropriate because the scope of counsel's representation did not include representation of Debtors in these two matters. No party in interest has requested that sanctions be imposed.

Debtor's counsel appears to have proceeded in the good faith belief that the limitation on services was appropriate. As explained below, however, there may be questions as to whether counsel fully met the standards of professional conduct applicable to attorneys representing debtors in this Court. Nevertheless, in view of counsel's apparent good faith, and because there has been no showing of any adverse consequences to Debtors, the Court determined at the hearing that sanctions or other discipline were not appropriate or necessary in this case. The Court thus was not required to determine whether counsel's conduct was in accordance with standards of professional conduct, and makes no findings or conclusions with regard thereto.

## II. DISCUSSION

### A. The Circumstances of a Chapter 7 Debtor

Standards of professional conduct apply in the context of real clients facing real issues. Proper consideration of professional responsibilities of attorneys for chapter 7 debtors thus requires an understanding of the issues facing chapter 7 debtors and their need for representation in the case.

A consumer in distressed financial circumstances considering bankruptcy has two basic objectives. The first and critical objective is to eliminate as much debt as possible. A second goal is to keep as many assets as possible. In order to make a reasoned decision about whether to file for bankruptcy relief at all and, if so, whether to file under chapter 7 or chapter 13, the debtor must have an understanding of what debts will be eliminated and what

---

**5.** Georgia Rules of Professional Conduct, Rule 4.2(a). The Georgia Rules of Professional Conduct are set forth in Rule 4–102 of the Rules of the State Bar of Georgia. *See* STATE BAR OF GEORGIA HANDBOOK (2002–2003) H–20—H–53.

property the debtor can retain and under what circumstances. A debtor who cannot discharge as much debt or cannot retain as much property as expected in a chapter 7 case may not want to file bankruptcy or may want to proceed under chapter 13. An attorney filing a case under either chapter, of course, must certify that he or she has explained the relief available under both chapters.[6]

Elimination of debt is effected through the discharge. A debtor will not achieve the primary purpose of filing a chapter 7 case if the discharge is denied or if a substantial portion of the debt is excepted from discharge.

Retention of property is effected through the use of exemptions, redemptions, reaffirmation agreements, and motions to avoid liens on exempt property. To know what property can be retained, a debtor must know what property is encumbered and whether, and to what it extent, he or she will be able to deal with that encumbrance through utilization of these various bankruptcy tools. A debtor who cannot retain property as expected under chapter 7 may want to consider proceeding under chapter 13. A debtor who expects to retain encumbered property and is unable to do so has not obtained the expected benefits from the bankruptcy filing.

A consumer has three options in proceeding with a bankruptcy filing, as explained in *In re Castorena*, 270 B.R. 504, 524–525 (Bankr.D.Idaho 2001) (footnotes and citations omitted):

Debtors have three options in pursuing bankruptcy relief. They may appear *pro se* (or *in propria persona*), representing themselves as best they can. This is often foolish and, in many cases, a fresh start for these debtors is frus-

trated. There are commonly errors committed in the handling of their cases, and also often errors of omission, *i.e.*, opportunities missed due to debtors' lack of knowledge. But these individuals have the right to represent themselves should they so choose.

The second alternative is to use the services of a petition preparer. This adds, in this Court's opinion, very little to the first option. Petition preparers are prohibited from providing legal advice in any fashion. Petition preparers are, in essence, typing services. Many if not most debtors with the desire to represent themselves can do so without a petition preparer. The proper forms can be obtained from myriad sources at nominal cost.... A legitimate question can be raised as to why an individual who believes himself capable of representing himself in bankruptcy court would at the same time feel the need to hire a typist to complete forms which the debtor alone must fill out.

The third alternative ... is the retention of a licensed lawyer to assist them in successfully navigating the statutory channels of bankruptcy law.

The court in *Castorena* also discussed the obstacles facing a debtor in a chapter 7 case, 270 B.R. at 525–26 (footnote in original):

When a consumer debtor files for chapter 7 relief, he[7] faces a large number of burdens. He needs to ensure that his debts and assets, and income and expenses, are all completely and accurately scheduled. He needs to consider which of his assets may be exempt under applicable law, and assert such claims. He must disclose prior financial transactions as required by law, and en-

---

**6.** *See* Fed. R. Bankr.P., Official Form 1, Exhibit "B".

**7.** The masculine form is used solely for convenience.

sure that correct and complete answers are given to numerous questions on the statement of financial affairs. He has to identify how he intends to deal with his collateralized obligations, including whether he plans to reaffirm, redeem, surrender, or retain and continue paying for those goods, and he must perform that intention.

He must meet and cooperate with his trustee, and must ensure that property of the estate and documents and records are provided to the trustee. If the trustee has concerns over his claimed exemptions, he'll have to defend these exemptions, which might require litigation if some other resolution isn't reached.

The debtor must testify, under oath, at a meeting of creditors, and answer the questions of the trustee and any creditors who chose to appear. What he says there may have significant repercussions, as might the testimonial assertions in his schedules.

If things proceed smoothly, the debtor will receive a discharge. But he will likely need advice as to its extent and limits. He may encounter creditors who ignore his discharge and try to collect a debt scheduled in the case. Prior to discharge, he may also hear from creditors who ignore his filing and try to continue collection activities. Or he may face discrimination at work or otherwise due to his bankruptcy. While all these types of conduct can be halted, the debtor needs someone to tell him so, and to assist him in enforcing his rights.

There may be objections to creditor claims raised by the Trustee. The debtor will wonder how this affects him, and whether he should care. There may be issues with family members or others who are "co-debtors." He may be approached by a utility with a request for security deposit for continued service, and need to decide whether he should consent or resist. He may receive pleadings in the mail, full of legal terminology and requesting "termination" or "annulment" of the stay, or "abandonment" or an order requiring him to decide whether to "assume or reject" an unexpired lease or an executory contract. He may have rent-to-own contracts, or payday loans or title loans, which must be addressed.

He almost certainly will receive solicitations to reaffirm debts. He'll need to turn to someone (other than the creditor) for advice on what reaffirmation means, whether he must or should reaffirm, and whether other options are available. He may have judgment liens, or nonpossessory, non-purchase money security interests on exempt chattels, which can be avoided in order to ensure his fresh start.

The case before the Court illustrates additional issues that a debtor faces. When a creditor requests stay relief with regard to an asset the debtor desires to retain, the debtor requires advice on what the options are with regard to retention of the asset. If redemption or reaffirmation is possible, the debtor will need to know how that is accomplished; if not, the debtor will need to know whether the objectives are achievable in a chapter 13 case. On the other hand, if a debtor does not desire to retain the asset, he or she may have questions as to what, if anything, he or she must do in response to the motion for relief from stay and whether attendance at the hearing is required. The answer that is obvious to bankruptcy practitioners—the debtor with no continuing interest in the asset does not have to respond to the motion or attend the hearing—is not always readily apparent to consumer debtors.

More critically, a debtor may, as in this case, be faced with an objection to discharge or a request for exception of a substantial portion of debts from discharge. The debtor obviously requires advice and assistance with regard to procedural and substantive issues affecting the right to a discharge of debts that was expected when the case was filed.

The represented debtor will turn to the lawyer for assistance when these issues arise. What are the obligations of a lawyer representing a chapter 7 debtor when there are concerns relating to the debtor's payment of fees for the lawyer's services?

## B. Professional Responsibilities of Counsel for Chapter 7 Debtor

Lawyers for chapter 7 debtors sometimes seek, as in this case, to deal with fee problems arising from the need for more services than are required in a routine case by excluding such services from the representation when the engagement begins. Is this permissible? Regardless of the terms of the representation agreement, what are the responsibilities of the lawyer until the lawyer withdraws in accordance with BLR 9010-2(b), which requires leave of court if the client does not consent?[8] Finally, under what circumstances will the Court permit withdrawal where the reason relates to payment of fees? It is to these issues that this Opinion now turns.

### 1. Limitation on Services to be Provided

Attorneys practicing in this Court are governed by the Georgia Rules of Professional Conduct (the "Georgia Rules").[9] A fundamental standard of those rules is that the attorney represent the client competently. Georgia Rule 1.1 provides as follows:

A lawyer shall provide competent representation to a client. Competent representation as used in this Rule means that a lawyer shall not handle a matter which the lawyer knows or should know to be beyond the lawyer's level of competence without associating another lawyer who the original lawyer reasonably believes to be competent to handle the matter in question. Competence requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation.

As discussed above, a consumer who is considering filing a chapter 7 bankruptcy petition has two primary objectives: elimination of debt and retention of property. The engagement of an attorney to represent a consumer in a bankruptcy case necessarily includes services required to accomplish those objectives. If obstacles arise to the accomplishment of those objectives, such as an objection to discharge, competent representation under Georgia Rule 1.1 requires the lawyer to provide

---

**8.** The text is set out in note 1 *supra.*

**9.** BLR 2091-1 makes District Court Local Rules 83.1C and 83.1F applicable to all actions and proceedings in the Bankruptcy Court. District Court Local Rule 83.1C provides as follows:

All lawyers practicing before this court shall be governed by and shall comply with the specific rules of practice adopted by this court and, unless otherwise provided, with the Code of Professional Responsibility and the Standards of Conduct contained in the Rules and Regulations of the State Bar of Georgia and with the decisions of this court interpreting these rules and standards.

As of January 1, 2001, the Georgia Rules of Professional Conduct set forth in Rule 4–102 of the Rules of the State Bar of Georgia establish the standards of professional conduct for Georgia lawyers. STATE BAR OF GEORGIA HANDBOOK (2002–2003), pages H–20—H–53.

representation essential to the client's pursuit of the purposes of the representation.

■ Absent a valid, professionally appropriate contractual limitation on the scope of services between attorney and chapter 7 debtor, then, the lawyer is engaged to provide services in the bankruptcy case, and the lawyer is obligated to represent the client in all matters, including any discharge or dischargeability litigation, unless and until grounds exist for the attorney's withdrawal under applicable professional standards.

■ May an attorney and client agree to limit the scope of the attorney's engagement to exclude representation with regard to certain matters such as discharge litigation? At this point, it is appropriate to point out that, even if the attorney may properly limit the scope of the engagement, the attorney nevertheless is obligated to represent the client in the bankruptcy case unless and until permitted to withdraw by the court.[10]

Limiting the scope of representation may permit the lawyer to charge a lower fee in view of reduced services. At the same time, the limitation of services threatens the ability of a client to obtain proper representation. As set forth in the comment to the Restatement (Third) of the Law Governing Lawyers: [11]

Clients inexperienced in such limitations may well have difficulty understanding important implications of limiting a lawyer's duty. Not every lawyer who will benefit from the limitation can be trusted to explain its costs and benefits fairly. Also, any attempt to assess the basis of a client's consent could force

disclosure of the client's confidences. In the long run, moreover, a restriction could become a standard practice that constricts the rights of clients without compensating benefits. The administration of justice may suffer from distrust of the legal system that may result from such a practice. Those reasons support special scrutiny of noncustomary contracts limiting a lawyer's duties, particularly when the lawyer requests the limitation.

Georgia Rule 1.2(c) permits limitation under certain circumstances. It provides (emphasis added):

A lawyer may limit the objectives of the representation if the client consents *after consultation.*

The comment to this rule provides in pertinent part:

An agreement concerning the scope of representation must accord with the Rules of Professional Conduct and other law. Thus, the client may not be asked to agree to representation so limited in scope as to violate *Rule 1.1: Competence,* or to surrender the right to terminate the lawyer's services or the right to settle litigation that the lawyer might wish to continue. The agreement should be in writing.[12]

With regard to the requirement of consultation, Georgia Rule 1.4 provides in pertinent part that "a lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation."

Section 19(1) of the Restatement (Third) of the Law Governing Lawyers states the

---

**10.** BLR 9010–2; *In re Pair,* 77 B.R. 976, 978–80 (Bankr.N.D.Ga.1987), (Cotton, C.J.); *see e.g., In re Wilson,* 282 B.R. 278, 282–83 (Bankr.M.D.Ga.2002) (Hershner, C.J.). *See* Part II, § B(2) *infra.*

**11.** RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS § 19, cmt. b.

**12.** Georgia Rule 1.2, cmt. 5.

rule governing limited representation of a client this way:

> Subject to other requirements stated in this Restatement, a client and lawyer may agree to limit a duty that a lawyer would otherwise owe the client if:
>
> (a) the client is adequately informed and consents; and
>
> (b) the terms of the limitation are reasonable in the circumstances.

The requirement in the Georgia Rule that the limitation not violate the requirement of competent representation is equivalent, in substance, to the Restatement's principle that the terms of the limitation must be reasonable in the circumstances. The point of either formulation of the concept is that the client must obtain a level of services required for the purposes of the representation.

█ Rule 1.2(c) and the Restatement thus state three fundamental requirements that must be met before an attorney may properly limit the scope of services to be provided to a client. First, the attorney must consult with the client about the limited representation that will be provided. Second, the client must provide informed consent, and this consent should be evidenced by a writing. Most important, the limitation must be reasonable in the circumstances or, in terms of the Georgia Rule, the engagement must not be so limited as to prevent competent representation.

The requirements with regard to consultation and consent in the chapter 7 bankruptcy context are stated well in these excerpts from *In re Castorena*, 270 B.R. 504 (Bankr.D.Idaho 2001) (emphasis added):

[Consultation][13] involves the attorney explaining to a debtor the nature of the bankruptcy process, what problems could or will be encountered, how those problems should be addressed, and the risks or hazards, if any, associated with those problems. Consent involves a clear understanding on the part of the debtor as to these factors and the possible results of a debtor proceeding without an attorney being present. [270 B.R. at 528 (quoting *In re Bancroft*, 204 B.R. 548, 551–52 (Bankr.C.D.Ill.1997)]).

In order to make an informed decision, the client must understand what might be faced in the bankruptcy, and the risks associated with representing himself in handling those contingencies. Many lawyers find themselves surprised by what can arise in an otherwise "simple" bankruptcy case. The reported decisions of this and other bankruptcy courts make it clear that, even in garden variety chapter 7 cases, counsel for debtors and those who might be characterized as their adversaries (creditors, or occasionally the trustee) sometimes have distinctly polar views of what is permissible and what is not. *The ability to adequately explain the lay of the bankruptcy landscape, including all its variations, contingencies and permutations, in order to obtain a truly informed consent is suspect.* [270 B.R. at 529.]

The grant of the discharge and the retention of exempt property are the central objectives of a chapter 7 filing. Indeed, the grant of the discharge is in most cases the essential reason for filing; without it, the debtor has submitted himself or herself to all of the disadvantages of filing and has obtained no benefit in exchange. De-

---

**13.** The *Castorena* court used the term "disclosure" here, the standard applied by the court in *In re Bancroft*, 204 B.R. 548, 551–52 (Bankr.C.D.Ill.1997), which *Castorena* quotes.

As noted by the *Castorena* court, the requirement in the Idaho (and the Georgia) rule of "consultation" does not imply anything less. *Castorena*, 270 B.R. at 527, n. 44.

nial of the discharge is, thus, devastating to the debtor.

■ To achieve his or her objectives in a bankruptcy case, the chapter 7 debtor must comply with numerous, complex requirements, and may face objections from a variety of parties. In view of these potential difficulties, competent representation requires the attorney to provide services that are necessary to achieve the basic, fundamental objectives of the representation. If the lawyer does nothing more than prepare the petition, statement, schedules, and related documents and attend the § 341 meeting, the lawyer has done little more than a petition preparer.[14] At best, such representation will have provided the debtor with some preparation and advice; however, the debtor must then proceed in the case essentially *pro se*. As noted by the court in *Castorena*, this is not competent representation, 270 B.R. at 529:

> To send a debtor into a bankruptcy *pro se*, on the theory that he has had "enough" advice and counseling in the document preparation stage to safely represent himself, is, except in the extraordinary case, so fundamentally unfair as to amount to misrepresentation.

■ An attorney desiring to limit the scope of an engagement has the burden of demonstrating compliance with all of the conditions required for the validity of the limitation. In the context of representing a consumer in an area of law as complex as bankruptcy, it will be the unusual case where the burden can be met. As stated in *Castorena*, 270 B.R. at 530:

An attorney, in accepting an engagement to represent a debtor in a chapter 7 bankruptcy case, will find it exceedingly difficult to show that he properly contracts away any of the fundamental and core obligations such an engagement necessarily imposes. Proving competent, intelligent, informed and knowing consent of the debtor to waive or limit such services inherent to the engagement will be required. Compliance with [Rules of Professional Conduct 1.1, 1.2 and 1.4] is mandatory, and must be proved.

■ In summary, the principles and authorities addressed above establish that an attorney representing a chapter 7 debtor ordinarily may not limit the scope of that engagement. Absent compliance with the standards discussed above, an attempt to limit the engagement is a violation of Georgia's Rules of Professional Conduct and subjects counsel to professional discipline. For a limitation on services to be valid, "that limitation must be carefully considered and narrowly crafted, and be the result of educated and informed consent." *Castorena*, 270 B.R. at 531.

In considering the limitation of services, the *Castorena* court noted, *id.* at 530:

> [W]hen accepting an engagement to represent a debtor in relation to a bankruptcy proceeding, an attorney must be prepared to assist that debtor through the normal, ordinary, and fundamental aspects of the process. These include the proper filing of all required schedules, statements and disclosures; preparation and filing of necessary amendments to the same; attendance at the

14. FED. R. BANKR P. 1007(b) requires the debtor to file schedules of assets and liabilities, a schedule of current income and expenditures, a schedule of executory contracts and unexpired leases, and a statement of intention as required by 11 U.S.C. § 521(2), all as prescribed by the appropriate Official Forms. A petition preparer is a person, other than an attorney, who may prepare documents for filing in a bankruptcy case in accordance with standards set forth in 11 U.S.C. § 110. Because they are not attorneys, they cannot give legal advice to debtors.

§ 341 meeting; turnover of assets to the trustee, and cooperation with the trustee; compliance with the tax turnover and other orders of the Court; performance of the duties imposed by § 521(1), (3) and (4); counseling in regard to § 521(2) and the reaffirmation, redemption, surrender or retention of consumer goods securing obligations to creditors, and assisting the debtor in accomplishing those aims; and responding to issues that arise in the basic milieu of the bankruptcy case, such as violations of stay and stay relief requests, objections to exemptions and avoidance of liens impairing exemptions, and the like.

In addition to the foregoing, this Court considers the fundamental and core obligations necessarily imposed by an engagement to represent a consumer debtor in a chapter 7 bankruptcy case to include representation with regard to reaffirmation or surrender of real estate securing obligations to creditors and representation with regard to the grant of the discharge and any exceptions thereto. As discussed above, these matters are at the very center of the bankruptcy case.

The foregoing specification of fundamental and core obligations is not exhaustive. As stated in *Castorena*, 270 B.R. at 530:

It is difficult to describe every such service, much less predict each variation from the norm, which might arise in a given case. Indeed, this is a large part of the reason why truly informed consent limiting future services would be so difficult to establish. The summary above is, therefore, not intended to be and cannot be read to be exclusive. Rather, it is illustrative of key issues which arise with sufficient regularity and which are common to all consumer bankruptcies so as to be part and parcel of the engagement. What else might be found to fall within or without must await specific facts and specific cases. But the closer to the heart of the matter—the debtors' desire to obtain bankruptcy relief and the process necessary to do so—the less likely exclusion is appropriate.

The fact that an attorney cannot limit representation does not mean that the attorney cannot charge separately for matters beyond the originally anticipated scope of work or defined services included in a "flat fee." For example, an attorney may properly charge a client a flat fee for preparing the chapter 7 petition and related documents and attending the § 341 meeting, while charging additional amounts, on either a flat fee or hourly basis, for other work such as negotiation of reaffirmation agreements, filing of motions to avoid liens, or defense of adversary proceedings relating to the discharge or dischargeability of debts. Of course, some or all of such matters could also be included as part of the initial flat fee.

The question then is whether the attorney can condition provision of services on payment of the required fees. Must a lawyer filing a chapter 7 bankruptcy case for a client provide services to the client who cannot (or will not) pay for them? This involves consideration of the issues in the next two sections: the responsibilities of counsel as attorney of record for a chapter 7 debtor until granted leave to withdraw and the circumstances under which the Court should grant permission to withdraw.

### 2. *Obligations of Attorney for Chapter 7 Debtor Until Withdrawal Is Permitted*

The law is quite clear that an attorney representing a debtor may not withdraw from that representation except in accordance with the rules of the bank-

ruptcy court. *E.g., In re Pair,* 77 B.R. 976, 978–79 (Bankr.N.D.Ga.1987).[15] BLR 9010–1(a) provides that an attorney who files a chapter 7 case for a client becomes that debtor's attorney of record. An attorney of record may withdraw only with leave of the Court under BLR 9010–2.

In *Pair,* Judge Cotton ruled, 77 B.R. at 978:

> Generally, when an attorney undertakes representation he assumes obligations and duties to his client to handle the matter. As the court in *Kriegsman v. Kriegsman,* 150 N.J.Super. 474, 375 A.2d 1253 (1977), succinctly stated:
>
>> [A]n attorney has certain obligations and duties to a client once representation is undertaken. These obligations do not evaporate because the case becomes more complicated or the work more arduous or the retainer not as profitable as first contemplated or imagined. Attorneys must never lose sight of the fact that "the profession is a branch of the administration of justice and not a mere money-getting trade." As Canon 44 of the Canons of Professional Ethics so appropriately states: "The lawyer should not throw up the unfinished task to the detriment of his client except for reasons of honor or self-respect."
>
> *Id.* at 1256.
>
> That court emphasized that the attorneys should not be allowed to withdraw representation merely because their client was unable to pay all the fees the attorneys demanded. *See also State v. Weiner,* 37 Ohio St.2d 11, 305 N.E.2d 794 (1974).

■ Unless and until a lawyer is permitted to withdraw from representation of the chapter 7 debtor, the lawyer is obligated, by rules of this Court as well as by standards of professional responsibility, to represent the client in any matter filed in the Court or related to the bankruptcy representation.

These professional obligations—and the problems for client and attorney that may arise when they are ignored—are illustrated by *In re Wilson,* 282 B.R. 278 (Bankr. M.D.Ga.2002). In that case, a creditor filed a complaint objecting to the debtor's discharge. After the filing of the complaint and prior to the time the answer was due, the debtor's attorney filed a motion for leave to withdraw on grounds that the debtor refused to pay for required services, that the debtor refused the advice of counsel and refused to cooperate in the case, and that the debtor had retained other counsel. The time for answering the complaint expired without either an answer being filed or the motion to withdraw being ruled on. An order denying the discharge was entered because of the default, after which the debtor filed a *pro se* motion seeking to set aside the order. In ruling that the order could not be set aside because the motion had not been filed within ten days after its entry as required by the Federal Rules of Bankruptcy Procedure, the court expressed its view that counsel had failed to properly represent the debtor. Among other things, the court noted that counsel had failed to ensure that a response to the complaint objecting to discharge was timely filed while he was attorney of record. *Id.* at 284.

■ As explained in the previous section, the attorney's representation ordinarily must extend to all matters relating to the relief sought by the chapter 7 debtor, and particular services required to pursue that relief normally cannot be excluded. Regardless of whether a valid limitation on services as between lawyer

---

**15.** *Accord, e.g., In re Wilson,* 282 B.R. 278, 283 (Bankr.M.D.Ga.2002).

and client is established, however, the lawyer must represent the client until withdrawal is permitted. Specifically, a debtor's lawyer must represent the debtor in connection with any contested matter or adversary proceeding involving the debtor's interests, unless and until the attorney is granted permission to withdraw in compliance with BLR 9010–2(b).

The obligation to represent the client extends to *any* matter. It is troubling that a represented debtor *ever* make a *pro se* appearance. Such an appearance is a clear indication to the Court that counsel is not adequately representing the client because either the debtor is there for a good reason and thus needs counsel to be there also, or the debtor is there for no reason, indicating that counsel has not advised the debtor that appearance is not necessary. The Court understands that a chapter 7 debtor may have no real stake in certain matters, such as a motion for relief from stay with regard to collateral that the debtor does not want to retain. In such an instance, the debtor has no interest in the motion, no basis to oppose it in any event, and no reason to appear at the hearing. Although this is a simple, straightforward issue for a bankruptcy lawyer, consumer debtors often do not understand these matters and may, at significant cost or trouble (missing a day at work, having to arrange for day care, having additional transportation expense, and so on), think that their attendance is required at the hearing. The Court expects counsel for debtors to communicate with their clients and to advise debtors as to whether their attendance is required in such matters.

Aside from the unnecessary appearance by a debtor at a hearing where the debtor's interests are not at stake is the situation presented by the facts of this case: A debtor appears at a hearing on the lender's motion for relief from the stay because the debtor desires to retain the collateral. Although a chapter 7 debtor in most circumstances has no legal basis for opposing stay relief, the situation indicates that the debtor's attorney should explore at least two alternatives with the debtor: reaffirmation or conversion to chapter 13.

Instances may exist where the debtor insists on a course of conduct that either is not in the debtor's best interest or is not permitted under applicable law. Despite being properly advised by counsel, a debtor in such circumstances may insist on proceeding contrary to counsel's advice. Although such a debtor is not entitled to representation that requires the attorney to take an improper position, such a debtor remains entitled to the attorney's representation in court unless and until the attorney is permitted to withdraw.

The lawyer is not required, of course, to provide services without compensation. Nevertheless, until the lawyer is permitted to withdraw, the failure or refusal of the client to pay for services does not justify failure to provide representation of the client.

### 3. Withdrawal by Attorney for Debtor

Whether an attorney will be permitted to withdraw involves both procedural and substantive issues. As a procedural matter, the attorney must move to withdraw in compliance with the requirements of BLR 9010–2(b).[16] This rule requires, among other things, that counsel provide prior written notice to the client of the lawyer's intent to request permission to withdraw, a written motion served upon the client and any opposing counsel, and

---

**16.** The text of the rule is set forth in note 1     *supra.*

the expiration of ten days prior to the motion's submission to the Court.[17]

The substantive issue is the circumstances under which withdrawal will be permitted. Attorneys are entitled to a fair fee for services rendered. Clients, including debtors, cannot expect attorneys to provide free services. Counsel for debtors may be required to deal with a wide array of problems in the course of a bankruptcy case. As stated by Judge Cotton in *In re Pair*, 77 B.R. 976, 979 (Bankr.N.D.Ga. 1987):

> This court recognizes the uniqueness and scope of bankruptcy cases. By their very nature, bankruptcy cases may encompass numerous matters which are similar in scope to several nonbankruptcy civil suits.

The difficulty, of course, is that the legal services required may exceed the debtor's ability to pay for them. Regrettably, the amount of time, money, and effort that can be or should be expended in litigation is constrained by the budget of the litigants. Attorneys make a living by providing services for a fee. They understandably want to discontinue representation of clients when getting paid is a problem so that they can do other work for which they will be paid.

At the same time, courts have an interest in the proper administration of justice and in having parties before them properly represented. For this reason, courts have always limited the right of attorneys to withdraw from a case once they have appeared. As set forth in *In re Wilson*, 282 B.R. 278, 283 (Bankr.M.D.Ga. 2002):

> Although a court may not have the authority initially to require an attorney

to handle a particular case, once an attorney has voluntarily entered an appearance in a case, his rights and obligations before the Court are altered. In his dissent in *Mallard [v. United States District Court for the Southern District of Iowa,* 490 U.S. 296, 109 S.Ct. 1814, 104 L.Ed.2d 318 (1989)], Justice Stevens noted, "An attorney who has entered an appearance in a case may not withdraw without leave of court because the court's interest in making sure that a litigant is adequately represented and that the orderly prosecution of the lawsuit is not disrupted is paramount to a lawyer's personal interest in terminating a relationship with a client." *Mallard,* 490 U.S. at 316, 109 S.Ct. 1814 (Stevens, J., dissenting).

In considering the propriety of chapter 13 counsel's charging of a fee as a condition to attendance at certain hearings, Judge Cotton explained the rule in *In re Pair*, 77 B.R. 976, 979 (Bankr.N.D.Ga. 1987):

> Once employed, counsel's representation continues unless and until he is discharged by the debtor or withdraws upon court approval. Such court approval involves considerations of fairness, reasonableness and proper protection of debtor's rights based on the circumstances in each case. While they should not be unreasonably burdened, counsel cannot be permitted to initiate cases and then simply abandon debtors. Absent exceptional or unusual circumstances, counsel will be required to represent the debtor client until the conclusion of the case.

The same principles apply in chapter 7 cases. Once an attorney accepts

---

**17.** BLR 9010-2(b) provides that the lawyer may be relieved from its requirements if the lawyer files a Certificate of Consent signed by the client, the withdrawing attorney, and the substituting attorney, if one has been selected.

an engagement to represent a chapter 7 debtor in the bankruptcy case, the attorney will ordinarily be required to represent the debtor until the conclusion of the case, absent exceptional or unusual circumstances. Representation of the debtor in the case includes representation of the debtor in connection with any adversary proceedings or contested matters that are required in order to pursue the bankruptcy relief that the debtor reasonably expected, obviously based on consultation with counsel, when filing the case.

■ · Bankruptcy courts have realized that requiring attorneys to continue to represent debtors when there are questions about their ability to pay fees poses problems for lawyers. At the same time, bankruptcy courts have consistently observed that attorneys are professionals with higher obligations. As stated in *Castorena*, 270 B.R. at 530–31:

> Individuals place their financial lives, and more, in their attorney's hands. At-

torneys have ethical obligations to their clients regardless of the economic pressures which might exist. The balance cannot be tipped toward the interest in collecting fees to the detriment of the client's right to thorough and competent representation. If the proper balance cannot be maintained, the engagement should not be accepted.

Counsel for debtors should have a reasonable expectation of the work that will be required in connection with a chapter 7 bankruptcy case at the time it is filed.[18] They may set their fees accordingly and decline cases where the anticipated services will result in more fees than the client is willing or able to pay.

Nevertheless, unanticipated problems may arise, sometimes because the client may not have been completely forthcoming with the lawyer. In other instances, the lawyer may have misjudged the time and effort required to provide competent rep-

---

**18.** A debtor filing a chapter 7 bankruptcy case must file a statement of financial affairs, schedules of assets and liabilities, a schedule of current income and expenditures, and a schedule of executory contracts and unexpired leases. FED. R. BANKR.P. 1007(b); Official Forms 6, 7. In addition, 11 U.S.C. § 521(2) and FED. R. BANKR.P. 1007(b) require a consumer debtor to file a statement of whether the debtor intends to surrender or retain, by reaffirmation or redemption, assets that are encumbered. FED. R. BANKR.P. 1007(b)(2), Official Form 8. Collectively, these papers call for an extensive disclosure of the debtor's financial situation and background.

The debtor's lawyer assists the debtor in preparing these papers and submits them to the court. By submitting these papers to the bankruptcy court, the lawyer certifies that, to the best of the lawyer's knowledge, information, and belief, formed after inquiry reasonable under the circumstances, the allegations and factual contentions in them have evidentiary support or are likely to have evidentiary support after a reasonable opportunity for further investigation. FED. R. BANKR P.

9011(b)(3). The lawyer, therefore, has a duty to make reasonable inquiry with regard to the debtor's answers on these papers and consequently should have a fundamental understanding of the debtor's financial circumstances. Moreover, a lawyer representing an individual debtor must certify that the lawyer has explained to the debtor that the debtor may proceed under chapters 7, 11, 12, or 13 of the Bankruptcy Code and the relief available under each. FED R. BANKR.P., Official Form 1, Exhibit B. This obligation arises by statute. Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub. Law No. 98–353, § 322, 98 Stat. 333 (reprinted in E App. COLLIER ON BANKRUPTCY Part 6(a) at App. Pt. 6–37 (15th ed. rev.2002)) *amended by* Bankruptcy Judges, U.S. Trustees, and Family Farmer Bankruptcy Act of 1986, Pub. Law No. 99–554, § 283(aa), 100 Stat. 3088 (reprinted in E.App. COLLIER ON BANKRUPTCY, *supra*, Part 7(a) at App. Pt. 7–46).

A lawyer fulfilling the investigative and counseling duties required by these provisions with the competence required by Georgia Rule 1.1 ordinarily will be aware of potential problems in the case.

resentation. Doubts about the client's ability to pay in these and other situations may often arise.

Withdrawal as a matter of course is not a professionally valid solution to this problem; attorneys cannot abandon their clients. Attorneys will be expected to continue representation of their clients in such circumstances unless there is an unreasonable burden on counsel which, taking into account "considerations of fairness, reasonableness, and proper protection of debtor's rights based on the circumstances of each case," provides a sufficient basis for permitting counsel to withdraw. *In re Pair*, 77 B.R. 976, 979 (Bankr.N.D.Ga.1987). Of course, withdrawal is also appropriate if the client requests discharge of the attorney, or other ethical reasons require withdrawal.[19]

The filing by a creditor of an objection to the debtor's discharge or to the discharge of its debt (or other activity indicating that such action is contemplated) threatens the debtor's primary objective in filing the bankruptcy case. The debtor will need legal services from the lawyer in evaluating the merits of creditor's and the debtor's positions, asserting the debtor's, and litigating or settling the matter. The debtor and lawyer will need to consider potential attorney's fees and expenses involved and reasonable arrangements for their payment. Obviously, the debtor must answer the complaint or face the entry of judgment by default.

There is an obvious danger to the debtor's rights and interests if the lawyer withdraws at this critical time. If the reason for withdrawal is that the lawyer and the debtor are unable to reach a reasonable arrangement with regard to attorney's fees, considerations of fairness, reasonableness, and proper protection of the debtor's rights, as set forth in *Pair*, require that, prior to withdrawal, counsel consult with the debtor to minimize the adverse effects of the withdrawal and take action to protect the debtor's rights pending withdrawal.

To minimize the adverse effects of withdrawal, the lawyer's consultation with the debtor should include an explanation of the substantive issues involved in the adversary proceeding and the procedural requirements for proceeding *pro se* from that point on, including critical matters such as the allegations of the complaint, possible legal and factual defenses, legal principles applicable to the claims and defenses in the litigation, the requirement of a written response to the complaint and how to serve and file it, the need to respond to discovery requests and how to do so, and the debtor's need to produce evidence to defend in the adversary proceeding. In connection with this consultation, the lawyer should furnish copies of statutory provisions and rules applicable to the litigation and forms or models for the filing of pleadings and papers.

Protection of the debtor's rights pending withdrawal requires the lawyer to file a timely response to the complaint or to obtain an extension of time to give the debtor sufficient time to respond if withdrawal is permitted. The requirement of BLR 9010–1(b) that pleadings on behalf of a represented party be filed by the lawyer establishes this obligation because, until

---

**19.** *See* Georgia Rules 1.16(a) and (b)(1), (2), (3) (providing that a lawyer may withdraw, among other things, if the representation will result in violation of the Georgia Rules of Professional Conduct or other law, if the client persists in a course of action involving the lawyer's services that the lawyer reasonably believes is criminal or fraudulent, if the client has used the lawyer's services to perpetrate a crime or fraud, or if the client insists upon pursuing an objective that the lawyer considers repugnant or imprudent).

withdrawal is permitted, the only way that the debtor can properly file a response or other pleading is through counsel. Moreover, as the case of *In re Wilson,* 282 B.R. 278 (Bankr.M.D.Ga.2002), makes clear, the lawyer *must* represent the debtor in adversary proceedings relating to the case until leave to withdraw is granted.

Different considerations apply where a creditor takes action to which the debtor has no defense and about which the debtor has received competent representation. For example, counsel may have properly advised the client that a tax debt or past due child support is not dischargeable and that no defense exists to an action to except such obligations from the discharge. A lawyer convinced that no defense exists is not obligated to continue to represent the client; indeed, under Fed. R. Bankr. P. 9011, the lawyer cannot properly present a defense which lacks a good faith basis.[20] If the initial consultations and inquiries required by Rule 9011 have been thorough and the client has been fully forthcoming with counsel, the client will be aware of the problem when the petition is filed. If the issue comes as a surprise, competent representation requires that counsel represent the client when it does arise. In either situation, however, the lawyer for a debtor who has no legal defense still has work to do, such as attempting to effect a resolution of the matter on terms that are feasible for the debtor. And if the debtor insists on pursuing a legal position or defense that the lawyer thinks is without merit, the prudent lawyer will seek to protect the client's ability to assert the position on a *pro se* basis pending the attorney's efforts to withdraw.

As the foregoing discussion indicates, a number of factors will determine whether it is appropriate to permit an attorney to withdraw. Where the reason is the client's payment of fees, leave to withdraw will ordinarily be granted only where an unreasonable burden on counsel exists and withdrawal is justified based on considerations of fairness, reasonableness, and proper protection of the debtor's rights based on the circumstances of the case. *Pair,* 77 B.R. at 979. Counsel seeking to withdraw, therefore, should be prepared to demonstrate that a reasonable arrangement for the debtor's payment of fees is not possible and that, as discussed above, counsel has consulted with the debtor to minimize the adverse effects of the withdrawal and has taken actions to protect the debtor's rights.

### C. Summary of Lawyer's Professional Responsibilities

The following summarizes the rules applicable to representation of chapter 7 debtors in this Court:

1. Competent representation of a chapter 7 debtor requires that the attorney represent the debtor in all matters in the case that are necessary to the pursuit of the client's primary objectives, including the receipt of a discharge of debts and retention of exempt property. Representation to pursue those goals necessarily involves the provision of services to the debtor in adversary proceedings and contested matters that affect the debtor's interests. The scope of that representation ordinarily cannot be limited.

2. A lawyer must represent the debtor in connection with all adversary proceedings and contested matters filed in the case which may affect the debtor's rights and interests unless and until the lawyer

---

**20.** Competent representation, of course, requires that the lawyer explain to the debtor why there is no defense and, if necessary, why it cannot be presented under Fed. R. Bankr. P. 9011.

withdraws in accordance with BLR 9010–2(b).

3. Leave to withdraw must be sought in accordance with BLR 9010–2(b), which requires, among other things, that counsel provide prior written notice to the client of the lawyer's intent to request permission to withdraw, a written motion served upon the client, the United States Trustee, and opposing counsel, and the expiration of ten days prior to the motion's submission to the Court.[21] Leave to withdraw will not be permitted except where the client requests discharge of the attorney, there is an unreasonable burden on counsel which, taking into account "considerations of fairness, reasonableness, and proper protection of debtor's rights based on the circumstances of each case," *Pair*, 77 B.R. at 979, provides a sufficient basis for permitting counsel to withdraw, or other ethical reasons require withdrawal.[22]

## III. THE CIRCUMSTANCES OF THIS CASE

The Court issued an order requiring counsel to show cause why sanctions should not be imposed in this case because the Debtors had appeared *pro se* in an adversary proceeding and contested matter. Counsel sought to justify the failure to appear in these proceedings on the ground that counsel had agreed with the Debtors to exclude such services from the scope of the engagement.

■ The Rule 2016 disclosure statement filed by counsel is ineffectual to limit the scope of representation for several reasons. First, it is not signed by the Debtors. Thus, it does not establish that the Debtors consented to the limitation as Georgia Rule 1.2(c) requires. To justify the limitation of representation, therefore, counsel would have to produce some other evidence that the Debtors agreed to the limitation of services. As discussed above, Georgia Rule 1.2(c) states that the preferred method of establishing consent is in writing.

Second, the Rule 2016 statement does not clearly limit the scope of representation. Paragraph five states that the attorney will render legal services for "all aspects of the bankruptcy case," including certain specified services. Paragraph six then states that fees cover only the specifically listed services, that fees do not include adversary and/or contested matters, and that fees include preparation of the petition and schedules, attendance at the § 341 meeting, and reaffirmation and/or surrender agreements as necessary; it then concludes with the statement, "no other services provided."

The Rule 2016 statement thus indicates that the *fee* charged does not include certain matters, but the language does not clearly and unequivocally limit the scope of representation. The addition of "no other services provided" to a paragraph dealing with fees in a document which also states that the attorney will represent the debtor in *all* aspects of the bankruptcy case does not, under ordinary principles of construing contract language, establish a contractual limitation on services.

Third, even if the contractual language were crystal clear on this point, and even if the Debtors agreed to the limitation, the Rule 2016 statement does not demonstrate compliance with the requirements of Geor-

---

**21.** The rule provides that the lawyer may be relieved from its requirements if the lawyer files a Certificate of Consent signed by the client, the withdrawing attorney, and the substituting attorney, if one has been selected.

**22.** See note 19 *supra*.

gia Rule 1.2(c) that counsel consult with Debtors and that the Debtors make an informed decision to limit representation. To comply with these requirements, counsel would have to show, by another writing or by credible testimony, that Debtors fully understood the possibility that creditors would object to discharge or to dischargeability of debts, the risks involved in proceeding in such litigation without representation, and other factors relevant to that decision as discussed above.[23]

■ Finally, it does not appear that a limitation on representation in the circumstances of this case would have been reasonable or, in the terms of Georgia Rule 1.2(c), that the limitation would have resulted in competent representation for Debtors. The services sought to be excluded—representation in connection with discharge and dischargeability litigation and efforts to retain a residence encumbered by a mortgage—go to the essential purposes of Debtors in filing the bankruptcy case. There may be an unusual case where an informed debtor could make a reasonable and intelligent decision to engage an attorney to file a chapter 7 bankruptcy petition on a limited basis that excludes services such as representation in discharge or dischargeability litigation; counsel would bear a heavy burden to demonstrate that this case is one of them under the principles set forth in *Castorena* and discussed above.

■ Counsel appears to have proceeded in the good faith belief that the limitation on services was appropriate, and it appears that Debtors have not suffered any adverse consequences. The issues raised by the Order to Show Cause are resolved. Limited to the circumstances of this case, sanctions or other discipline are not appropriate or necessary.

The standards of professional conduct in representing debtors should now be clear so that similar circumstances will not present themselves in the future.

---

**23.** Part II, § B(1).