**In the Matter of Vaughn DABNEY, Debtor.**

**No. A08–77955–PWB.**

United States Bankruptcy Court, N.D. Georgia, Atlanta Division.

April 7, 2009.

G. Scott Buff, Robert J. Semrad & Associates, Atlanta, GA, for Debtor.

## ORDER ON DEBTOR'S ATTORNEY'S FEES

PAUL W. BONAPFEL, Bankruptcy Judge.

Under the terms of this Court's General Order No. 6–2006, confirmation of a Chapter 13 plan results in allowance, subject to later review, of the attorney's fees of the debtor's lawyer, unless a party in interest objects. The Chapter 13 Trustee contends that the proposed compensation of the Debtor's attorney—payment of a flat fee of $3,500 for most services expected in this case—is not reasonable.

For the reasons set forth herein, the Court concludes that the Debtor's attorney has not shown that the compensation is reasonable under the facts and circumstances of this case. Having previously allowed interim compensation of $1,500 at the confirmation hearing, the Court will disallow the balance of the fee requested without prejudice to the attorney's right to seek further compensation if circumstances warrant or to file a renewed application for the currently disallowed portion.[1]

The "Contract for Legal Services for Representation in a Chapter 13 Bankruptcy" executed by the Debtor and his attorney reflects that the Debtor has agreed to pay Robert J. Semrad & Associates, LLC a "flat fee of $3,500 for representing [his] interest in matters relating to [his] chapter 13 case." (Application, Exhibit A). The scope of representation and services are further explained as follows:

---

1. This Court has authority to hear and determine this proceeding under 28 U.S.C. § 157(b)(1) as a core proceeding under 28 U.S.C. § 157(b)(2)(A) within the District Court's jurisdiction under 28 U.S.C. § 1334(b) that the District Court has referred under 28 U.S.C. § 157(a) and L.R. 83.7, NDGa.

I understand that the above-mentioned flat fee of $3,500 covers services rendered through the completion of the Chapter 13 Plan. I further understand that under extraordinary circumstances, ROBERT J. SEMRAD & ASSOCIATES, LLC reserves the right to petition the Court for additional compensation for these services. Such circumstances may include, but are not limited to representation for adversary proceedings, evidentiary hearings, and appeals. If additional compensation is warranted, ROBERT J. SEMRAD & ASSOCIATES, LLC currently bills at the rate of $275.00 per hour of attorney time, and $90.00 per hour of paraprofessional time. I understand that this hourly rate can increase in the future. I also understand that if I choose to convert my case to one arising under Chapter 7 of the Bankruptcy Code, additional fees shall be required to be paid to ROBERT J. SEMRAD & ASSOCIATES, LLC.[2]

The Chapter 13 Trustee raised the issue of the reasonableness of the proposed fee in her objection to confirmation of the Debtor's plan. The crux of the Trustee's argument is that the proposed fee of $3,500 does not appear reasonable because the Debtor is paying only unsecured, non-priority debts in his chapter 13 plan. At a hearing on December 3, 2008, the Court confirmed the plan and allowed the Debtor's attorney interim compensation of $1,500, directing him to file an application for compensation for the remaining $2,000 in order for the Court to determine whether the fee request *in toto* was reasonable in accordance with the standards of 11 U.S.C. § 330(a)(1) and the ethical requirements of the State Bar of Georgia.

Bankruptcy courts have traditionally scrutinized professional compensation for several reasons. There is a concern for protecting the interest of a debtor in financially distressed circumstances from possible overreaching. There is the additional concern of protecting creditors since, in any case in which a debtor is paying less than 100% to unsecured creditors, the creditors are essentially paying the debtor's attorney's fees. Further, the Bankruptcy Code recognizes that there is an inherent " 'public interest' that 'must be considered in awarding fees.' " S. REP. 95–989, at 5826 (1978) (*quoting Massachusetts Mutual Life Insurance Co. v. Brock,* 405 F.2d 429, 432 (5th Cir.1968)).

At the same time, bankruptcy courts recognize the critical importance of debtors' attorneys to the system. Thus, a reasonable fee must be one which protects the debtor, the estate, and creditors, while being " 'generous enough to encourage' lawyers and others to render the necessary and exacting services that bankruptcy cases often require." S. REP. 95–989, at 5826 (1978) (*quoting In re Yale Express System, Inc.,* 366 F.Supp. 1376, 1381 (S.D.N.Y.1973)). This is especially true for debtors' attorneys who have increased duties and responsibilities under the Bankruptcy Abuse Prevention and Consumer Protection Act ("BAPCPA").

The starting point for consideration of the reasonableness of a fee is the procedure governing compensation in chapter 13 cases. This Bankruptcy Court has adopted General Order No. 6–2006 with respect to compensation of attorneys in

---

**2.** Although this issue is not presently before the Court except to the extent it is encompassed by the Court's discussion of compensation and the scope of representation, the Court observes that a debtor's attorney may not condition representation of a debtor in a case converted from chapter 13 case to chapter 7 upon the payment of additional fees. *See In re Egwim,* 291 B.R. 559 (Bankr. N.D.Ga.2003).

chapter 13 cases filed on or after October 1, 2006. General Order No. 6–2006 replaced the "no look" fee[3] with a "market-based" approach which recognized that the nature and extent of legal services required to successfully prosecute a chapter 13 case filed after enactment of BAPCPA could vary widely. Rather than stating a maximum amount for a fee, therefore, the General Order provides that the "fee and method of payment agreed to between the attorney and the debtor should be reasonable in accordance with 11 U.S.C. § 330(a)(1) and the ethical requirements of the State Bar of Georgia."

Under 11 U.S.C. § 330(a)(1)(A), a professional's compensation must be for actual, necessary services, and such compensation must be reasonable. In order to determine the amount of reasonable compensation to award,

> the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including -
>
> (A) the time spent on such services;
>
> (B) the rates charged for such services;
>
> (C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;
>
> (D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;
>
> (E) with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and

> (F) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

11 U.S.C. § 330(a)(3).

In addition, § 330(a)(4)(B) provides that in a chapter 13 case the court "may allow reasonable compensation to the debtor's attorney for representing the interests of the debtor in connection with the bankruptcy case based on a consideration of the benefit and necessity of such services to the debtor and the other factors set forth in this section."

The Court's General Order places a substantial burden on the attorney to charge a reasonable fee and to give meaningful thought to what a reasonable fee is under the Georgia Rules of Professional Conduct. The Georgia Rules require consideration of factors including the following:

> (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
>
> (2) the likelihood that the acceptance of the particular employment will preclude other employment by the lawyer;
>
> (3) the fee customarily charged in the locality for similar legal services;
>
> (4) the amount involved and the results obtained;
>
> (5) the time limitations imposed by the client or by the circumstances;
>
> (6) the nature and length of the professional relationship with the client;
>
> (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and

---

**3.** A "no look" fee is one in which an attorney may charge up to a certain figure established by the court (previously less than $2,501 in this District) without the need for a fee application.

(8) whether the fee is fixed or contingent.[4]

■ Any consideration regarding the reasonableness of a fee must be made in the context of the fee structure itself. While this district prior to 2006 embraced the flat, "no look fee," the General Order does not favor a particular type of fee arrangement and thus permits attorneys to craft fee arrangements with clients using different methods. Now parties may agree to, for example, a flat fee that encompasses all services, a lodestar method (time spent multiplied by hourly rate), or a blended version whereby a flat fee encompasses certain base services, and other services may be carved out and paid differently. Against this backdrop, a court must determine whether the fee is reasonable based on the factors set forth in § 330, Rule 1.5 of the Georgia Rules of Professional Conduct, and *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir.1974).

In the instant case, the parties have entered into a "flat fee" agreement for compensation of $3,500 to cover most representation in the case. Exceptions are for "extraordinary circumstances," which are not defined but include "adversary proceedings, evidentiary hearings, and appeals." There is much to commend the use of a "flat fee" in a consumer bankruptcy case. It is, as the Debtor's attorney observes, a "practical billing method" because it does not require a debtor, whose resources are limited, to come out of pocket for additional work required in the case. By covering all the work a debtor may require in the course of a chapter 13 case, the flat fee gives much-needed certainty to the debtor.

■ Some cases require more work than others, some require less. Because a flat fee encompasses all required services and the extent of required services is not fully predictable at the outset of a case, the reasonableness of a flat fee cannot necessarily be determined based on the amount of services required in the case. Nevertheless, the amount of a proposed flat fee must bear some relationship to the work that will likely be required, which inevitably depends on the unique facts and circumstances of the case. Indeed, the recognition of the uniqueness of each bankruptcy case is a fundamental underpinning of General Order 6–2006.

■ The General Order provides neither a floor nor a ceiling for fees. Because some cases are more difficult or time-consuming than others, an attorney should justly be compensated for her services and not limited by a "cap" or "no-look" fee in a complex or difficult case. By the same token, a debtor should not be overcharged in a case that lacks the complexity or difficulty of others.

---

4. Rule 1.5(a) of Georgia Rules of Professional Conduct. These factors are for the most part identical to those set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir.1974), which has long been the benchmark test for evaluating the reasonableness of fee applications in bankruptcy cases. In *Johnson*, the Fifth Circuit set forth twelve factors for a court to consider in the determination of compensation for an attorney as follows: the time and labor required; the novelty and difficulty of the legal questions; the skill required to perform the legal service properly; the preclusion of other employment by the attorney due to acceptance of the case; the customary fee for similar work in the community; whether the fee is fixed or contingent; time limitations imposed by the client or the circumstances; the amount involved and the results obtained; the experience, reputation, and ability of the attorney; the undesirability of the case; the nature and length of the professional relationship with the client; and awards in similar cases. *Johnson*, 488 F.2d at 717–719.

■ In the determination of any fee request, the ultimate question is what is fair and just under the circumstances. The problem in this case is that the fee sought by the Debtor's attorney is not based on the unique circumstances of this case; instead, it is based on his estimated calculation of how much time he spends in an average bankruptcy case (Application, ¶ 1):

> Debtor's Counsel's Attorney Fees are set at a flat rate of $3,500.00 ($275/hour over 13 hours). Although time spent on any given case may be more of [sic] less than 13 hours, Debtor's Counsel bases its fee estimating 13 hours of total work during the life of a case. The flat fee includes, but is not limited to, preparing the petition, ensuring that all required documents are filed, attending and prosecuting the required hearings, resolving Trustee objections, resolving creditor objections, drafting and securing confirmation of the plan, monitoring the claims register over the life of the case and securing a discharge. Because Debtor's Counsel spends an average of 13 hours to prosecute a typical case, Debtor's Counsel submits that it is reasonable to calculate a flat fee based on 13 hours of work.

■ The purpose of the General Order is to allow an attorney to tailor her fee in a chapter 13 case based on the work to be performed in the case. The work to be performed in a case and the complexity of such work is a function of a number of factors. Some of those factors are common to all bankruptcy cases, such as the initial gathering of information from the client, the preparation of the petition, statement of financial affairs, schedules, and plan, the gathering of all other necessary documents such as pay advices and tax returns, attendance at the meeting of creditors and the confirmation hearing, and the review of proofs of claim.

Beyond the basics, other factors may add a level of complexity and time. For example, the inclusion of debt secured by a house or car necessarily requires work on issues such as the determination of adequate protection payments for secured creditors, the calculation of payments for mortgage arrearage claims, and determination of appropriate interest rates on secured claims, as well as preparation for potential automatic stay litigation. Some cases may present complications such as dischargeability issues, tax problems, or projected disposable income issues. Other factors contributing to the difficulty of a case include pending litigation, garnishments, foreclosure, or divorce proceedings. And of course, an attorney in establishing a flat fee must evaluate the likelihood of work involving postconfirmation issues such as motions for relief from stay or motions to dismiss.

The reasonableness of a fee must also be a function of intangible factors that an attorney must consider in her estimation of the time, effort, and difficulty involved in representation. For example, a typical case involving a house and routine unsecured debt may not be so simple if the debtor is elderly or homebound and unable to travel to and from the attorney's office. Nor is a case simple when an attorney must unravel a lifetime of poor recordkeeping for a debtor in order to resolve a mortgage arrearage claim or tax claim. A reasonable fee must be a function not only of the complexity of the debts and assets of the debtor, but of the complexity of the debtor herself.

■ Thus, reasonableness is a function of both objective factors such as time, complexity of issues, and length of representation, and subjective factors such as the nature of the client, the difficulty of the

client's predicament, her reliability and predictability.

■ In this case, however, the Debtor's attorney has articulated no factors that enable the Court to determine the reasonableness of the fee request of $3,500. Instead, the attorney has relied on an average of 13 hours of work for a chapter 13 case in calculating the fee in this case. Such a conclusion illustrates the problem with a "no look" fee—some debtors will overpay for services, while others will underpay. A debtor with a relatively simple case should not be required to pay more, and a debtor with a difficult case should not be expected to pay less, on the theory that the cost of bankruptcy evens out among the easy and hard cases.[5] Simply put, reasonableness *in this case* is not established by the contention that $3,500, *on average*, is reasonable.

Because the attorney has not set forth specific facts and circumstances to establish the reasonableness of the fee in this case, the Court looks to the record of the case itself and the nature of work required by the case in and of itself, as well as in comparison to other cases the Court routinely sees on its calendar, to determine whether the proposed fee of $3,500 is reasonable.

This chapter 13 plan funds solely unsecured, nonpriority debt and proposes to pay unsecured creditors 100% of their claims. The Debtor's schedules list no secured debt or priority unsecured debt and no such claims have been filed. The Debtor is current on an automobile lease and no arrearage claim was anticipated or filed. The Debtor is paying two student loan claims directly. Thus, the Debtor's attorney was not required to deal with issues related to debts such as cars, mortgages, taxes, or domestic support obligations. While the Debtor is "above-median," there do not appear to have been any contests or disputes as to the calculation of the Debtor's projected disposable income, probably due to the fact that the Debtor proposes to pay $663 per month, an amount that far exceeds his projected disposable income of $204.67. None of this necessarily renders this case simple; but there is nothing in the record to rebut the proposition that this case is more simple than the average chapter 13 case which involves a house and/or cars.[6]

---

5. This is especially true where a debtor is paying less than 100% to unsecured creditors because, essentially, creditors are paying the freight.

6. The one unique wrinkle in this case was the Chapter 13 trustee's objection to the Debtor's chapter 13 plan in relation to his car lease. The Debtor's original plan provided (properly) that the Debtor would continue to make direct payments of $261.22 per month to VW Credit Leasing, LTD for the lease of a 2008 Volkswagen Jetta. The Chapter 13 trustee objected to confirmation of the Debtor's chapter 13 plan on the basis that it "fails to provide for an increase in payments when direct payments at $261.22 per month for an automobile lease ends in July 2011; [sic] may show lack of good faith or create a disposable income problem in violation of 11 U.S.C. Sections 1325(a)(3) and 1325(b)(2)(A)." [Doc.

No. 19]. Based on the Debtor's payment of 100% to unsecured creditors, it is unclear how a debtor's plan could run afoul of either good faith or projected disposable income requirements or why the Debtor should be compelled to increase payments upon the expiration of the lease. Nevertheless, rather than contest the unfounded objection, the Debtor amended his plan to provide that payments would increase by $261.22 in August 2011 upon termination of the lease.

This plan provision has the potential of causing practical difficulties for the Debtor in the future. One must presume that, even if the Debtor's lease payment ends, his need for transportation will continue. But the Debtor's plan now provides that, at that point, money previously needed to make the car lease payment will now go to pay his unsecured creditors' claims. Presumably, the Debtor will still need a car and may have to

Based on a review of the record and the Court's knowledge and experience with chapter 13 cases, the Court concludes that the Debtor's attorney has not shown that a fee of $3,500 for this case is reasonable. Even if one starts with the premise that each chapter 13 case is unique, it is fair to say that a great number of chapter 13 cases share common or typical elements. Typical, however, does not equate with simple. Because bankruptcy permits a debtor to halt a foreclosure or repossession of collateral, it is fairly common and typical to find that a chapter 13 case involves secured debt, such as a house and car. It is common for a debtor to have other secured debt, including judgment liens or claims based on the financing of other personal property. There may be priority tax debt owed to federal, state, or local taxing authorities. All of these elements require time and effort on the part of the debtor's attorney to account for issues such as cure payments, adequate protection payments, applicable interest rates, whether liens may be avoided or stripped off, or whether cramdown is available. All the pieces of the chapter 13 puzzle must be made to fit and this is no easy task.

Even for a "typical" case, there is no one authoritatively acceptable fee. Indeed, as a function of the competitive market and the experience of practitioners, a range of reasonable fees for such a typical case is possible. The problem here, however, is that this is not a typical case. The Debtor has no secured or priority debt, he is current on his automobile lease payments, and he is funding only unsecured nonpriority debt. No creditors objected to the Debtor's chapter 13 plan and the one objection filed by the chapter 13 trustee was settled even though, as the Court has noted, such settlement may not have been necessary. With no secured debt, there will likely be no postconfirmation motions for relief from the automatic stay. There are no complicating factors evident from the record to warrant the fee requested.

■ The burden is on the attorney seeking allowance of professional compensation to prove its reasonableness. *E.g., In re Paul,* 100 B.R. 38, 41 (Bankr.D.Colo. 1989). Absent evidence demonstrating the factors implicated by § 330, Rule 1.5 of the Georgia Rules of Professional Conduct, and the traditionally cited *Johnson* factors, the Court cannot conclude that the proposed fee of $3,500 is reasonable based on the current record.[7] Because the attorney has not carried his burden of establishing the reasonableness of the fee, the Court disallows the balance of the fee request that exceeds the previously awarded amount of $1,500 without prejudice to the attorney's right to seek further compensation if circumstances warrant or to file a renewed application for the currently disallowed portion.

Having disallowed the balance of the fee in this case, the Court is compelled to make two observations regarding fee contests in general. First, the Court recognizes that the chapter 13 trustee is in a unique but difficult position. She reviews

modify the plan to take account of payments required to lease or finance it. It is unclear as to why the future need for transportation cannot be taken into account at the time of confirmation rather than require a debtor who is paying 100% to his unsecured creditors to basically pay them at an accelerated rate. Sometimes a case is simple and the

trustee and creditors have a responsibility not to make a case more complicated than it is.

7. The Court offered the parties the opportunity to have an evidentiary hearing, but the parties advised the Court that they did not require an evidentiary hearing and wanted the matter decided on the record and briefs in the case.

thousands of cases and, in many ways, is most familiar with the range of fees being charged by debtors' attorneys. This gives her a unique perspective in recognizing when a fee appears to exceed the norm and it is appropriate for her, as an officer of the court and fiduciary of the estate, to raise the issue of reasonableness if she deems appropriate.

 But just as a debtor's attorney must take into account the unique facts of each case, so must an objecting party. A party should not object to a fee because it exceeds a certain threshold amount above which the party deems any fee unreasonable or because it seems high without having a basis for that position. Because there is no *per se* unreasonable fee, at a minimum, the objecting party, prior to filing an objection, should communicate with the debtor's attorney to discuss the factual circumstances that informed the decision to charge the fee at issue. Only when dissatisfied with the explanation should a party object to the reasonableness of an attorney's fee. In doing so, she should set forth a specific basis for her contention that the fee is not reasonable.

 The second observation concerns what an attorney might do to prove the reasonableness of her fee when contested. In order to establish reasonableness, an attorney must set forth evidence of the facts and circumstances of the case which establish that, in light of § 330, Rule 1.5 of the Georgia Rules of Professional Conduct, and the *Johnson* factors, the proposed fee is fair and appropriate. Such evidence may be established by the attorney's personal experience or the comparable experience of other practitioners by affidavit or testimony. The attorney must

be prepared, within the bounds of professional responsibility and the attorney-client privilege, to identify the unique facts and circumstances of the case that support the proposed fee and the experience she has that enables her to take such representation and charge the proposed fee.[8]

 This court has learned from experience that the role of the debtor's attorney is critical to the functioning of the consumer bankruptcy process. To that end, a debtor's attorney must be and deserves to be compensated fairly for the value of her services. Fair compensation is a function of objective factors and subjective factors unique to each case. It is the role and responsibility of the debtor's attorney to consider such factors in calculating her fee, and articulate such factors if the fee is challenged. Here, the Court concludes that the Debtor's attorney has failed to demonstrate that a fee of $3,500 for this case is reasonable, taking into account all of the factors that are relevant to determination of a reasonable fee under § 330, Rule 1.5(a) of the Georgia Rules of Professional Conduct, and the *Johnson* factors. Accordingly, it is

ORDERED that the application of the Debtor's counsel for compensation is disallowed. Having previously allowed interim compensation of $1,500 at the confirmation hearing, the Court will disallow the balance of the fee requested without prejudice to the attorney's right to seek further compensation if circumstances warrant or to file a renewed application for the currently disallowed portion.

---

8. The Court stresses that, when a flat fee arrangement is at issue, the attorney's showing does not have to include detailed records of the time spent in the specific case, although actual time spent is always relevant. Expecting the production of time records is obviously inconsistent with a flat fee arrangement.