In re Charles Alan BURNETT and Denise Burnett, Debtors.

In re Joshua Thomas Andrews and Amy Corrine Andrews, Debtors.

Nos. 03:09–bk–13432, 03:11–bk–12581.

United States Bankruptcy Court, E.D. Arkansas, Jonesboro Division.

June 13, 2011.

See also 450 B.R. 116.

G. Mike DeLoache, Joel G. Hargis, Crawley & DeLoache, PLLC, Garland L. Watlington, Watlington Law Firm, Jonesboro, AR, for Debtors.

***ORDER OF CONTEMPT***

AUDREY R. EVANS, Bankruptcy Judge.

Now before the Court is the *Order to Show Cause* (docket # 11) entered April 27, 2011, in the case of Joshua and Amy Andrews, Case No. 03:11-bk-12581. On September 28, 2010, the Court entered an *Order to Appear and Show Cause* (the **"First Order to Show Cause"**) in the case of Charles and Denise Burnett, Case No. 03:09-bk-13432. As a result of the First Order to Show Cause, on April 15, 2011, the Court entered a *Memorandum Opinion and Order Granting Motion to Disgorge Fees and Imposing Sanctions on Chad R. Oldham* (the **"Suspension Order"**) (docket # 135) in the Burnett's case.[1] In that order, the Court sanctioned Mr. Oldham by suspending him from appearing before, or filing pleadings or other documents in, the United States Bankruptcy Courts. On April 20, 2011, five days after the entry of the Suspension Order, Mr. Oldham filed the Andrews' Chapter 7 bankruptcy case. The Court entered this Order to Show Cause in order to allow Mr. Oldham an opportunity to explain why his act of filing a new bankruptcy case was not in contempt of the Suspension Order. The Court held a hearing on the Order to Show Cause on May 5, 2011. Mr. Oldham was present at the hearing and represented by counsel, Mr. Jim Lyons. At the conclusion of the hearing, the Court took the matter under advisement. After careful consideration and review of the evidence presented by Mr. Oldham, the Court finds Mr. Oldham in contempt of the Suspension Order and enters sanctions against him accordingly.

**FACTUAL BACKGROUND**

The history of events pertinent to the Court's ruling on this matter begins in the case of Charles and Denise Burnett, Case No. 03:09-bk-13432. On September 28, 2010, the Court entered the First Order to Show Cause in the Burnett's case. The First Order to Show Cause was based on allegations by the Burnetts, set out in letters to the United States Trustee, that Mr. Oldham had failed to timely file their bankruptcy case in order to prevent a

1. *In re Burnett,* 450 B.R. 116 (Bankr.E.D.Ark. 2011).

foreclosure sale on their home, that Mr. Oldham had not been involved in their case or provided them with legal advice, and that Mr. Oldham had made misleading representations regarding their desire to surrender their home. The hearing on the First Order to Show Cause was held on January 6, 2011, contemporaneous with a hearing on a Motion to Disgorge Fees brought by the U.S. Trustee on the basis of those same allegations. On April 15, 2011, as a result of the First Order to Show Cause, the Court entered the Suspension Order against Mr. Oldham.

In the Suspension Order, the Court summarized the professional services rendered by Mr. Oldham in the Burnetts' case, as follows:

> As a direct result of Mr. Oldham's failure to provide legal services: the debtors lost their home; got behind on car payments; used their $6,000 tax refund for purposes other than paying their mortgage arrearage; filed a bankruptcy; and ultimately, ended up living in a borrowed camper in an RV park. Mr. Oldham failed to meet with his clients prior to filing the bankruptcy case, failed to provide them with legal advice, and ignored them in spite of his first-hand knowledge of the harm he had inflicted on them. Mr. Oldham acted purposefully to conceal his errors and shield himself from liability by removing documents from the Debtors' file, and by making misleading statements in his letters to the Debtors and in his sworn testimony before this Court.

As a result of its findings, the Court granted the U.S. Trustee's Motion to Disgorge Fees and found that Mr. Oldham's conduct required that sanctions be entered against him. The Court turned its findings over to the Arkansas Supreme Court's Committee on Professional Conduct as a complaint against Mr. Oldham, and suspended Mr. Oldham from practicing before bankruptcy courts "until such time that the Arkansas Supreme Court's Committee on Professional Conduct has reviewed this matter and made its determination." In addition, the Court allowed an exception to the suspension for a period of 14 days in order for Mr. Oldham "to make arrangements for the continued protection of his clients interests." [2]

On April 20, 2011, five days after the entry of the Suspension Order, Mr. Oldham filed a new Chapter 7 bankruptcy case on behalf of the Debtors, Joshua and Amy Andrews, Case No. 03:11–bk–12581. On April 27, 2011, the Court entered the Order to Show Cause requiring Mr. Oldham to appear before the Court and explain why his act of filing a new bankruptcy case was not in contempt of the Suspension Order.

A hearing on the Order to Show Cause was held on May 5, 2011. At that hearing, Mr. Oldham presented evidence and testimony. In an opening statement, it was explained that on the day Mr. Oldham filed the Andrews' bankruptcy case, Mr. Old-

2. The Suspension Order stated as follows:

> [I]t is hereby ... **ORDERED** that this Opinion will be forwarded to the Arkansas Supreme Court's Committee on Professional Conduct as a complaint against Mr. Oldham; it is further
>
> **ORDERED** that Mr. Oldham is suspended from appearing before, or filing pleadings and other documents in the United States Bankruptcy Courts, until such time that the Arkansas Supreme Court's Committee on Professional Conduct has reviewed this matter and made its determination. This suspension shall take effect immediately, except Mr. Oldham shall be allowed a period of **fourteen (14) days** from the entry of this Order to make arrangements for the continued protection of his client's interests.

*In re Burnett,* 450 B.R. at 138.

ham was aware of the Suspension Order, and was aware that it prohibited him from either filing documents in or appearing before the Court. However, Mr. Oldham's attorney explained that Mr. Oldham believed that his actions fell within the parameters of the exception to the Suspension Order, which allowed Mr. Oldham a period of 14 days to make arrangements for the continued protection of his clients' interests.

Mr. Oldham testified at the hearing on the Order to Show Cause in this case. He began his testimony by making the following statement:

> I would simply like to reiterate and express my apologies, Your Honor, we're having to be here today, taking, once again, the time of—the Court's time to address a situation based on an action that I caused to happen. Now, those actions, and we'll demonstrate to the Court, that arise out of a misunderstanding or misinterpretation of a prior order of this Court, but I would have the Court know that I apologize for that and that there certainly was no purposeful, intentional, or willful violation of an order of the Court.

Following this opening statement, Mr. Oldham testified that he filed the case because he believed his clients, the Andrews, were under duress and that the urgency of their circumstances made filing the case necessary in order to protect the Debtors' interests.

Mr. Oldham presented the Court with a register of events that he kept in the Andrews' file in his office (Oldham Exhibit # 2). That register indicates that the Andrews met with Mr. Oldham for an initial consultation on February 23, 2011. Mr. Oldham testified that he conducted that initial consultation himself, and on that same day, the Andrews retained his services for representation in bankruptcy. Mr. Oldham testified that during this initial consultation, the topics of discussion included "the nature of their debts, obligations, and the nature of creditors' claims, and any pressing issues that they might have."

The contract signed by the Andrews and Mr. Oldham provides the services that Mr. Oldham will perform for an agreed upon price. Those services include analyzing the Debtors' financial situation, preparing and filing the bankruptcy case, and representation at the meeting of creditors. The agreement also discusses the additional fees that will be incurred for representation if someone should object to the discharge, or if it becomes necessary to amend the originally filed petition or schedules. The contract also provides that the "[a]ttorney accepts said employment on the conditions hereinbefore enumerated and agrees to exercise reasonable skill and diligence in the premises."

Following the initial consultation, on March 10, 2011, Mr. Oldham sent the Andrews a letter requesting several documents that were needed in order for him to prepare their case for filing. Specifically, this letter requested the Debtors' credit counseling certificate, records of the Debtors' income throughout the prior six months, tax transcripts, and statements from Southern Bank and Northeast Arkansas Federal Credit Union (Oldham Exhibit # 4). The events register from the file shows that the Debtors provided Mr. Oldham the requested credit counseling certificate on March 29, 2011, and provided Mr. Oldham the other requested information on April 7, 2011.

According to Mr. Oldham's testimony, when the Debtors brought in the documents on April 7, 2011, they also gave him with a copy of a Summons and Complaint in lawsuit that Northeast Arkansas Federal Credit Union had filed against Mr. An-

drews, CV–2011–38 (Oldham Exhibit # 3). The lawsuit was filed on a deficiency on a note for a 2009 Kia Sportage vehicle, which had been repossessed at some point after the Debtors' initial consultation with Mr. Oldham on February 23, 2011. The relief requested in the Complaint was for a judgment against Mr. Andrews in the amount of $20,359.88, plus interest. The Complaint was filed, and the Summons was issued, on March 18, 2011, in the Circuit Court of Poinsett County, Arkansas. Attached to the Summons was a notice advising Mr. Andrews that he had "20 days from the day you were served with this summons" to file an Answer in the case, or else the court could enter a judgment by default against him.[3]

During the hearing, the Court inquired of Mr. Oldham whether he was aware of the date upon which a default judgment could be entered in the lawsuit if no Answer were filed:

> THE COURT: Did you have calendared some place what day default judgment might be entered if in fact the debtors had not answered the complaint filed against them in state court?
>
> MR. OLDHAM: No. No, Your Honor, I don't think I would have—I would have noted that.
>
> THE COURT: Okay. Well, the reason I'm asking is that you're—besides stating that there was no intent,[4] you've also stated that you are functioning under the order that says that you could take the actions necessary for continued protection of your clients. And you stated that the clients, the Andrews, were in—I think you stated that there was a time urgency here—and maybe I was inferring—but had they been served with a complaint?
>
> MR. OLDHAM: We did have a copy of the complaint, Your Honor, yes.
>
> THE COURT: Okay. And had you noted in your file when you had to file this bankruptcy by in order to have—in order to protect the clients from garnishment?
>
> MR. OLDHAM: No, Your Honor, not—none other than to avoid the entry of—of judgment.
>
> THE COURT: Okay. Well, is that—was that in the file? Did you have the date? I was trying to figure out what was the driving force behind filing here. . . .
>
> THE COURT: Okay. So if they delivered this to you on 4/7—and "this," I refer to Exhibit 3—and it was—so on 4/7, you had the documentation. On 4/13, you printed the petition and made an appointment. On 4/19, they signed their petitions. And on 4/20, you filed them. And on 4/20, you also heard from the Court. So I think what you testified to is that you believed the filing of the bankruptcy was for the continued protection of the clients. And I thought that you explained that you were—that they were in particular danger because you didn't want a judgment to be entered and their wages to be garnished. So what I—I guess what I was looking for is some information in their file that would have told you what that date would be, when they had to answer, or when a default judgment would be entered, when a garnishment might start. What was it that put them in a situation that you felt you would be avoiding harm if you proceeded filing their peti-

3. The Court notes that under Arkansas law, the requesting party is required to obtain an entry of default, pursuant to Ark. R. Civ. P. 55(a), before a default judgment could be entered.

4. Mr. Oldham had testified that his actions were not a "purposeful, intentional, or willful violation" of the Court's order.

tion on the same day that you were told not to practice anymore? [5]

MR. OLDHAM: Well, You Honor, and I don't have that specific date, but as I said, it was the culmination of what had taken place over the last month and the debtors' perception and their communications to me and their concerns to me that led us to take that action. We—as a practice, we don't—we don't wait until a judgment is entered. We don't like to do that for obvious reasons, but to act as expeditiously as we can in those instances. And that was the case here.

Mr. Oldham testified that after receiving the information on the lawsuit, between the dates of April 7, 2011, and April 13, 2011, he prepared and completed the Debtors' bankruptcy paperwork. Mr. Oldham stated that on April 13, 2011, he printed the bankruptcy documents and scheduled an appointment for the Debtors to review and sign those documents. On April 15, 2011, the Court entered the Suspension Order and Mr. Oldham received notice of that Order. The Debtors and Mr. Oldham met for the scheduled consultation on April 19, 2011, and signed the documents at that time. The next day, April 20, 2011, Mr. Oldham filed the Andrews' bankruptcy case.

The Debtors' Schedule F lists Northeast Arkansas Federal Credit Union as an unsecured creditor with an "unknown" claim amount. In response to a question in the Debtors' Statement of Financial Affairs, which inquires about "all suits and administrative proceedings to which the debtor is or was a party," the box labeled "none" was filled in. The Disclosure of Compensation of Attorney form filed with the petition indicates that the Debtors have paid $650.00 to Mr. Oldham for legal services. Mr. Oldham signed as the attorney of record on these documents.

In explaining why he believed his act of filing the Andrews' case fell within the 14 day exception to the Suspension Order, Mr. Oldham stated that he was concerned about the possibility that a default judgment would be entered in the state court lawsuit, that Mr. Andrews' check might be garnished as a result of the judgment, and that Mr. Andrews was concerned about his employment status if a garnishment order were entered. Mr. Oldham stated that he considered these Debtors "to be in dire straits." In addition to the circumstances created by the lawsuit, Mr. Oldham explained that he felt it necessary to file the bankruptcy case because "[e]verything had been done up to that point, but for the execution and filing of [the] bankruptcy. And these debtors were under particular duress." Mr. Oldham stated that he believed the best way to address these concerns was to file the bankruptcy case.

Mr. Oldham's testified that at the point that he met with the Andrews to sign their bankruptcy paperwork, he was aware that he had been suspended and that he would not be able to represent them with regard to any issues that arose throughout their bankruptcy case. Despite this knowledge, Mr. Oldham did not inform the Debtors of his suspension.

Mr. Oldham testified that after the Andrews' case was filed he wrote all of his Chapter 7 bankruptcy clients, and all of his clients with unconfirmed Chapter 13 cases, to inform them of the suspension.[6] Mr.

5. The Court would like to clarify for the record that the Suspension Order was entered on April 15, 2011. In this question, the Court misstated that Mr. Oldham received notice of his suspension on the same day as he filed the case, April 20, 2011. Mr. Oldham actually received the Suspension Order five days prior to filing the case.

6. Mr. Oldham did not provide a copy of any of these letters to the Court, and did not

Oldham testified that he had an agreement with two attorneys to handle his § 341(a) meetings, and stated that both attorneys had agreed to do so without compensation. Mr. Oldham also testified that substitutions of counsel would be filed in his cases as needed. As of the date of the entry of this Order, Mr. Oldham is listed as counsel in 28 Chapter 13 cases and 21 Chapter 7 cases in the United States Bankruptcy Court for the Eastern District of Arkansas.[7]

## LEGAL STANDARD

"If a party can make himself a judge of the validity of orders which have been issued, and by his own act of disobedience set them aside, then are the courts impotent, and what the Constitution now fittingly calls the 'judicial power of the United States' would be a mere mockery." *Gompers v. Buck's Stove & Range Co.,* 221 U.S. 418, 450, 31 S.Ct. 492, 501, 55 L.Ed. 797 (1911). The courts have the authority to enforce their orders through civil or criminal contempt proceedings and judicial sanctions. 11 U.S.C. § 105(a); *In re Ragar,* 3 F.3d 1174, 1177–79 (8th Cir.1993); *In re Swaffar,* 253 B.R. 441 (Bankr. E.D.Ark.2000); *In re Skinner,* 917 F.2d 444 (10th Cir.1990).

In the context of a civil contempt proceeding, judicial sanctions are employed to coerce the party into compliance with the Court's order, or to compensate for losses incurred due to the violation of that order. *United States v. United Mine Workers,* 330 U.S. 258, 303–04, 67 S.Ct. 677, 700, 91 L.Ed. 884 (1947). To hold a party in civil contempt, it must be shown that there was an enforceable order, that was clear and specific, and that commanded the party to perform or refrain from performing in accordance with the order. *Int'l Longshoremen's Ass'n, Local 1291 v. Philadelphia Marine Trade Ass'n,* 389 U.S. 64, 77, 88 S.Ct. 201, 208, 19 L.Ed.2d 236 (1967).

Criminal contempt proceedings are used to punish the alleged contemnor and to vindicate the Court's authority. *United Mine Workers,* 330 U.S. at 302–03, 67 S.Ct. 677. In order to hold a party in criminal contempt, it must be established that the violation of the order was "willful." *In re Downing,* 195 B.R. 870, 875 (Bankr.D.Md.1996); *Wright v. Nichols,* 80 F.3d 1248, 1251 (8th Cir.1996).

The court has broad discretion in determining what remedy is appropriate for an act of civil contempt. *In re Mayex II Corp.,* 178 B.R. 464, 470 (Bankr. W.D.Mo.1995). Generally, however, the appropriate sanction for an act of civil contempt is a calculated monetary penalty equal to that of the loss incurred and/or the amount necessary to coerce continued compliance with the order. *See United Mine Workers,* 330 U.S. at 304, 67 S.Ct. 677; *McDonald's Corp. v. Victory Investments,* 727 F.2d 82, 87 (3rd Cir.1984). A court should determine the amount of a sanction for civil contempt only after considering "the character and magnitude of the harm threatened by continued contumacy," "the probable effectiveness of any suggested sanction in bringing about the result desired," and "the amount of [the contemnor's] financial resources and the consequent seriousness of the burden." *United Mine Workers,* 330 U.S. at 304, 67 S.Ct. 677. Furthermore, when a sanction

provide any evidence or testimony as to what action had been taken with regard to his clients in confirmed Chapter 13 cases.

7. The Court notes that Mr. Oldham did not present evidence of actions he had taken to protect his client's interests in any of these ongoing bankruptcy cases.

is designed to coerce compliance, the sanction should be payable to the court, not the opposing party. *Hicks v. Feiock*, 485 U.S. 624, 632, 108 S.Ct. 1423, 99 L.Ed.2d 721 (1988).

The bankruptcy courts also possess broad authority under Federal Rule of Bankruptcy Procedure 9011, 11 U.S.C. § 105(a), and their inherent authority, to sanction the attorneys appearing before them. Fed. R. Bankr.P. 9011; 11 U.S.C. § 105(a); *In re Clark*, 223 F.3d 859, 864 (8th Cir.2000); *In re Brown*, 152 B.R. 563, 567 (Bankr.E.D.Ark.1993). A summary of these powers is set out in this Court's local rules:

> The standard of professional conduct for attorneys practicing in this Court is governed by the Arkansas Rules of Professional Conduct and Federal Rule of Bankruptcy Procedure 9011.... Additionally, the Court shall have such authority and discretion as are permitted by and under the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, statutory and common law, and the express and inherent powers conferred upon them. Sanctions may include suspension or disbarment from the practice before this Court.

Local Rule 2090-2 (adopted January 12, 2006).

Arkansas Rule of Professional Conduct 1.1 states that "[a] lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation." It is permissible for a lawyer to limit the scope of his representation. Arkansas Rule of Professional Conduct 1.2.(c). However, any such limitations must be reasonable in accordance with the ultimate objectives of the client, and must not so limit the representation that it would prevent the attorney from providing competent representation. *In re Egwim*, 291 B.R. 559, 571 (Bankr.N.D.Ga. 2003). Additionally, if the representation provided is to be limited in any way, it is necessary that the client provide informed consent. Arkansas Rule of Professional Conduct 1.2(c).

Pursuant to Fed. R. Bankr.P. 9011, by presenting a document to the court an attorney represents that he has made a reasonable inquiry to ensure that:

> (1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation; (2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law; (3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on a lack of information or belief.

Fed. R. Bankr.P. 9011(b). Sanctions entered pursuant to Rule 9011 may be monetary or nonmonetary in form. Fed. R. Bankr.P. 9011(c). However, the level of sanction must be limited to that required to deter misconduct, and cannot be used as a means of compensating the harmed party. *Id.; See also Kirk Capital Corp. v. Bailey*, 16 F.3d 1485, 1489 (8th Cir.1994); *In re Brown*, 152 B.R. 563, 568–69 (Bankr. E.D.Ark.1993) ("In determining an appropriate sanction, the court looks to fashioning a narrowly tailored solution which will achieve the specific purposes of the rule ...").

Section 105(a) provides, in part, that the bankruptcy court "may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title [and] ... no provision ... shall be construed to preclude the court from, *sua sponte,* taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process." 11 U.S.C. § 105(a).

Additionally, the bankruptcy courts have an inherent authority to sanction those appearing before them. *See Brown,* 152 B.R. at 567. This power is broad in scope, and includes the power to impose monetary sanctions, as well as to "control admission to its bar and to discipline attorneys who appear before it." *Chambers v. NASCO, Inc.,* 501 U.S. 32, 43, 111 S.Ct. 2123, 2132, 115 L.Ed.2d 27 (1991); *Plaintiffs' Baycol Steering Comm. v. Bayer Corp.,* 419 F.3d 794, 802 (8th Cir.2005); *Harlan v. Lewis,* 982 F.2d 1255, 1259 (8th Cir.1993). However, because of the potency of the court's inherent powers, great restraint and discretion is necessary when fashioning a sanction under those powers. *Chambers,* 501 U.S. at 44–45, 111 S.Ct. 2123; *Harlan,* 982 F.2d at 1262.

## DISCUSSION AND ANALYSIS

The purpose of the hearing conducted by the Court, as the title Order to Show Cause implies, was to provide Mr. Oldham with an opportunity to present an explanation for his actions, which were otherwise on their face indicative of contempt. In the Order to Show Cause, the Court specifically set out the relevant language from the Suspension Order,[8] and the actions by Mr. Oldham that appeared to be in violation thereof.[9] In short, Mr. Oldham was suspended from practicing before the bankruptcy court but for a limited exception allowing him to take actions to arrange for the continued protection of his clients' interests. Mr. Oldham's actions following that suspension appeared to be in contempt of the Suspension Order, and as a result, the Court set a show cause hearing in order to provide Mr. Oldham an opportunity to explain or justify his actions.

Mr. Oldham presented several different arguments during the hearing to explain how his actions fell within the exception to the Suspension Order. Mr. Oldham's primary argument for this proposition was that the urgency of the Debtors' circumstances required that he file the bankruptcy case in order to protect their interests.[10] Mr. Oldham also stated that the need to file the bankruptcy case was based on a culmination of circumstances, including the filing of a lawsuit against the Debtors in

8. In the Suspension Order the Court stated:

> Mr. Oldham is suspended from appearing before, or filing pleadings and other documents in the United States Bankruptcy Courts, until such time that the Arkansas Supreme Court's Committee on Professional Conduct has reviewed this matter and made its determination. This suspension shall take effect immediately, except Mr. Oldham shall be allowed a period of fourteen (14) days from the entry of this Order to make arrangements for the continued protection of his client's interests.

*In re Burnett,* 450 B.R. 116, 138 (Bankr. E.D.Ark.2011).

9. The Order to Show Cause states that "Mr. Oldham was provided electronic notice of the Order Imposing Sanctions at two email addresses: coldham@oldhamlawfirm.com and amy@oldhamlawfirm.com. On April 20, 2011, five days after Mr. Oldham received notice of the Order Imposing Sanctions, Mr. Oldham filed this case."

10. The Court notes that this is exactly the type of argument that, if factually supported, would provide justification for the action taken, and is the reason that the exception was included within the Suspension Order.

state court, an increase in the Debtors' level of interest in getting their bankruptcy case filed, and the fact that the majority of the work required to prepare the case for filing was completed before the Court entered the Suspension Order.

 Mr. Oldham's primary justification for his actions relied on the contention that the Debtors' circumstances were urgent, which made filing the case necessary to protect their interests. The urgent circumstances Mr. Oldham referred to were brought about by Northeast Arkansas Federal Credit Union filing a lawsuit against Mr. Andrews in state court. Mr. Oldham explained that the Debtors' concerns regarding this lawsuit were two-fold. The Debtors were concerned in large part by the possibility that a judgment could be entered in the state court lawsuit, and that Mr. Andrew's wages might be garnished as a result. Additionally, the Debtors were concerned that Mr. Andrew's employment status would be jeopardized if a garnishment order were issued.

However, the chronology of events presented to the Court does not support Mr. Oldham's contention that the urgency created by the state court lawsuit caused him to file the bankruptcy case. On March 18, 2011, Northeast Arkansas Federal Credit Union filed a Complaint, and had a Summons issued, against Mr. Andrews in the state court lawsuit. A notice provided on the Summons makes clear that an Answer to the Complaint is due within 20 days of service of the Summons, or else a default

judgment could be entered. Thus, the earliest date that a default judgment could be entered in the lawsuit against Mr. Oldham's clients was April 7, 2011.[11]

Mr. Oldham testified that the Debtors provided him with a copy of the Complaint and Summons on April 7, 2011. Yet, the Debtors' bankruptcy case was not filed until April 20, 2011, thirteen days later. While the Court does not imply from this that Mr. Oldham acted negligently by allowing this delay, the timeline it presents seriously undermines the veracity of Mr. Oldham's contention that he filed the case because it was urgent to do so. There can be no question that at the time of filing, the Debtors were at risk of a judgment being entered against them, and of a garnishment being issued as a result, but those urgent circumstances were present on April 7, 2011, the day Mr. Oldham became aware of the state court lawsuit.

 If the matter were truly urgent, it does not follow that Mr. Oldham would spend six days preparing the bankruptcy documents for filing, or that six additional days would pass before Mr. Oldham and the Debtors would meet to sign the completed documents. Mr. Oldham had all of the documents necessary to complete the filing by April 7, 2011. To the extent additional time was required to prepare the bankruptcy documents, Mr. Oldham could have filed a "skeletal petition" in order to more expediently protect the Debtors' interests.[12] Furthermore, even

11. The Court is well aware that the deadline for filing an Answer did not begin to run until the Summons was actually served on Mr. Andrews. However, because Mr. Oldham was unaware of the actual date of service, the date that is most relevant to this analysis is the earliest date that default could have theoretically been entered, which would be 20 days after the Summons was issued, or April 7, 2011.

12. In non-emergency bankruptcy cases, a debtor will typically file a number of required documents (Schedules, Statement of Financial Affairs, Statement of Attorney Compensation, etc.) with the bankruptcy petition. However, it is only necessary to file the petition (a two-page document) and the certificate of credit counseling in order to commence a bankruptcy case, and receive the protections afforded by it. 11 U.S.C. §§ 301–303. All

after the documents were signed on April 19, 2011, the case was not actually filed until the following day.[13] In sum, urgent circumstances created by the state court lawsuit existed on April 7, 2011, and Mr. Oldham became aware of the lawsuit on that day. Thus, the 13-day delay between receiving this information and filing the case undermines the veracity and credibility of Mr. Oldham's stated justification.

Additionally, it is important to recognize that Mr. Oldham did not take note of the date upon which a default judgment could be entered in the state court lawsuit. When the Court asked Mr. Oldham whether he calendared the date that the default judgment might be entered, Mr. Oldham replied, "No. No, Your Honor, I don't think I would have—I would have noted that." Mr. Oldham's failure to calendar this date weighs heavily against his stated justification for filing this case after the entry of the Suspension Order. The urgency caused by the risk of garnishment was directly related to the date that a default judgment could be entered in the state court lawsuit. Thus, when Mr. Oldham admitted that he did not record and keep track of this important date, he contradicted his stated justification for filing the bankruptcy case.[14]

Finally, Mr. Oldham's failure to list the lawsuit on the Statement of Financial Affairs further detracts from his contention that the state court lawsuit created an urgent need to file this case. As previously stated, Mr. Oldham testified that he received a copy of the state court lawsuit on April 7, 2011, prepared the bankruptcy documents during the following six days, and reviewed the documents with the Debtors six days after that. But, Mr. Oldham failed to include the lawsuit information in the Debtors' Statement of Financial Affairs, which asks specifically for information regarding lawsuits to which the Debtors are a party.[15] If this matter was not at the forefront of Mr. Oldham's mind when he prepared the Debtors' paperwork, or when he reviewed the docu-

other required documents can be filed at a later date. *See* Fed. R. Bankr.P. 1007(c). A "skeletal petition" is simply a term of art used in bankruptcy to refer to a case filed with only the bare minimum of the required documents. This is a common practice utilized by bankruptcy professionals when the debtors' circumstances require immediate action. The Court referenced the availability of this practice in the Suspension Order in regard to the circumstances in that case:

> The Court notes that even if the Debtors had been unable to provide this information in such an expedient manner, or if there was insufficient time to prepare the documents prior to the foreclosure sale, the bankruptcy system allows for the filing of a skeletal petition that would have prevented the foreclosure sale from taking place and allowed for extra time to prepare the required documents. *In re Burnett,* 450 B.R. at 132, n. 13.

13. Fed. R. Bankr.P. 5001 states that "[t]he courts shall be deemed always open for the purpose of filing any pleading...." Local Rule 5005-4 states that "[a]ll pleadings and documents required to be filed with the Court shall be electronically filed." As a frequent practitioner in this Court, Mr. Oldham files all pleadings electronically and is aware of this access to the Clerks' Office.

14. The Court notes that the difficulty of obtaining this answer from Mr. Oldham decreased the credibility of his statements. The Court engaged in a lengthy inquiry on this topic during the course of which Mr. Oldham initially answered that he would not have recorded the date, and then stated that he would have recorded the date needed to avoid the entry of judgment, and then later returned to his answer that he did not know the date. The Court also made note of Mr. Oldham's evasive answers in the Suspension Orders: "Similarly, several of Mr. Oldham's responses to questions from the Court were evasive and vague." *In re Burnett,* 450 B.R. at 135.

15. The Court notes that these documents are signed by the Debtors under penalty of perjury.

ments with them on April 19, 2011, then it certainly cannot stand as the circumstance which compelled him to file the case.

Mr. Oldham has attempted to establish that his act of filing a new Chapter 7 case was not in contempt of the Suspension Order because of the urgent circumstances created by the state court lawsuit. The facts as presented disprove this justification. There was a 13–day delay between Mr. Oldham learning of the state court lawsuit and the filing of this bankruptcy case. During that entire time, it was theoretically possible that a default judgment would be entered against the Debtors in the state court lawsuit. Furthermore, the reason the Court is forced to speak in terms of theoretical possibilities, is that the matter was of such minor significance that Mr. Oldham did not note the date on which a default judgment might be entered. Finally, Mr. Oldham failed to include the lawsuit on the very bankruptcy documents that he now claims motivated their creation. Based on these facts, the Court rejects Mr. Oldham's contention that the urgent circumstances created by the state court lawsuit caused Mr. Oldham to file this case in order to protect the Debtors' interests.

Mr. Oldham also presented the Court with two additional justifications to prove that the case was filed for the continued protection of his clients' interests. In his testimony, Mr. Oldham explained that nearly all of the work required to prepare the Debtors' case for filing was completed before he received the Suspension Order. Additionally, Mr. Oldham stated that the Debtors had expressed an increased interest in getting the bankruptcy case filed. The Court found both of those explanations to be credible based on the testimony and evidence presented. However, without more, those explanations are insufficient to justify Mr. Oldham in filing this case when he was only authorized to do so for the continued protection of his clients' interests. The reason that these explanations fail to provide any justification is that the act of filing a new case, in contrast to an act that concludes an already ongoing matter, creates new duties and responsibilities that Mr. Oldham could not provide, and it was not in the Debtors' best interests for Mr. Oldham to proceed as though he could.

The filing of a petition in bankruptcy is the beginning of the case. The debtor receives a "fresh start" not when the case is filed, but only after successfully protecting his exempt assets and obtaining a discharge. The attorney of record in a bankruptcy case has a duty to provide competent legal representation by assisting the debtor in navigating the challenging waters of bankruptcy law. *In re Egwim,* 291 B.R. 559, 572 (Bankr.N.D.Ga. 2003) ("[C]ompetent representation requires the attorney to provide services that are necessary to achieve the basic, fundamental objectives of the representation."). This is the main characteristic of representation that sets an attorney in a bankruptcy case apart from a bankruptcy petition preparer; an attorney's services necessarily require more than the mechanical preparation and filing of the bankruptcy case. *See In re Egwim,* 291 B.R. 559, 567 (Bankr.N.D.Ga.2003) ("Absent a valid, professionally appropriate contractual limitation on the scope of services between attorney and chapter 7 debtor, then, the lawyer is engaged to provide services in the bankruptcy case, and the lawyer is obligated to represent the client in all matters, including any discharge or discharge ability litigation ..."). Additionally, due to the complexity of bankruptcy law, an attorney will generally not be allowed to limit those fundamental, core obligations that often arise in a bankruptcy case. *Id.*

And, to the extent such obligations can be limited, those limitations are only allowed through the client's informed consent.

In this case, the contractual agreement that Mr. Oldham made with the Debtors states that he will represent the Debtors at the § 341(a) meeting of creditors, and for an additional fee, will represent the Debtors on any Objections to Discharge filed in the case, and amend the Debtors' schedules as necessary. Additionally, the Debtors in this case have to file a certificate stating that they have completed a Financial Management Course, and Mr. Oldham stated in his testimony that there were debts in the Debtors' case that would need to be reaffirmed. At the time that he filed the case, Mr. Oldham was aware that he would not be able to provide these services to the Debtors. As a result, the Court finds that Mr. Oldham was not able to provide the Debtors with the legal services that he had contractually agreed to provide, and that an attorney filing a bankruptcy case undertakes a professional obligation to provide.

To make matters worse, Mr. Oldham concealed this crucial information from the Debtors when they met to sign the bankruptcy documents on April 19, 2011. The magnitude of the offense caused by filing the case is greatly amplified by Mr. Oldham's failure to inform his clients of the severe limitations on his ability to represent them. Mr. Oldham should have explained the limitations of his ability to provide representation to the Debtors, and with their consent, transferred their file, all knowledge he had about their case, and any payment they had made to him, to an attorney who could provide competent legal representation throughout their case. At a minimum, before filing this case, Mr. Oldham should have obtained the Debtors' informed consent regarding the limitations to his representation. Instead, Mr. Oldham filed the Debtors' bankruptcy case and kept the legal fees for himself.

While it does not appear that Mr. Oldham took these actions with a willful intent to violate the Court's Suspension Order, the Court, nonetheless, finds that Mr. Oldham's action violated the Suspension Order as a result of his failure to comprehend and appreciate the responsibility placed on, and professional conduct required of, an attorney who elects to represent a debtor in a bankruptcy case.

## CONCLUSION

The Court entered an order suspending Mr. Oldham from practicing before the bankruptcy courts until such time that the Arkansas Supreme Court's Committee on Professional Conduct could review and make a determination on the conduct that resulted in the suspension. That suspension was effective immediately upon entry of the Suspension Order. A limited exception was included in the Suspension Order to allow Mr. Oldham to take necessary actions to arrange for the continued protection of his client's interests. After the Suspension Order was entered, and after Mr. Oldham knew of its contents, Mr. Oldham filed a new Chapter 7 bankruptcy case.

Mr. Oldham's justification for this action is that filing the case was urgent, and that doing so was necessary for the continued protection of the Debtors' interests. The Court rejects this contention. The time line of events leading up to the filing of the bankruptcy case, the fact that Mr. Oldham had not noted the date on which a default judgment could be entered in the lawsuit, and the fact that Mr. Oldham did not list the lawsuit in the bankruptcy filing, make clear that Mr. Oldham did not file this case because of an urgency related to the state court lawsuit. The Court also rejected Mr. Oldham's other justifications for filing

the case—that nearly all of the work was complete, and the Debtors' increased interest in the case being filed—on the basis that Mr. Oldham could not provide the Debtors with the minimum level of professional service necessary to afford competent representation in the bankruptcy case, and on the basis that Mr. Oldham concealed this information from his clients.

Mr. Oldham filed this new bankruptcy case with the knowledge that an Order of the Court had suspended him from practice, and with the knowledge that any action he would take was subject to scrutiny in a case pending before the Arkansas Supreme Court's Committee on Professional Conduct. This action was a violation of the Suspension Order, and Mr. Oldham has failed to provide the Court with any justification for it. Therefore, the Court finds Mr. Oldham in civil contempt and enters sanctions against him as set forth below.

Accordingly, it is hereby

**ORDERED** that Mr. Oldham is sanctioned in the form of his continued suspension from practice before the United States Bankruptcy Courts in accordance with the Suspension Order entered April 15, 2011, in Case No. 03:09–bk–13432; it is further,

**ORDERED** that Mr. Oldham is sanctioned in the form of a referral of this matter to the Arkansas Supreme Court's Committee on Professional Conduct as a supplement to the Court's previously submitted complaint against Mr. Oldham. Given the new facts of this case, and the increased level of scrutiny applied to Mr. Oldham's conduct at the time this action was taken, the Court submits this Order of Contempt to the Committee as evidence that Mr. Oldham lacks the capacity to understand and comprehend the professional and ethical nature of the practice of law, and as a sanction for Mr. Oldham's contemptuous conduct, the Court recommends that the Committee consider prohibiting Mr. Oldham from continuing to engage in the practice of law; it is further

**ORDERED** that, to the extent he has not already done so, Mr. Oldham shall provide **all** of his bankruptcy clients with a written notice of the suspension and the limitations the suspension has on his ability to provide them with adequate legal representation. Mr. Oldham shall provide the Court with an affidavit affirming that he has provided such notice, and shall attach to that affidavit copies of said notices that are representative in both substance and style to those actually provided to his clients. Mr. Oldham shall submit this certificate of compliance (as well as any other documents required to be submitted to the Court as a result of this Order) directly to this Court's Courtroom Deputy; [16] it is further,

**ORDERED** that Mr. Oldham shall provide the Court with a list of every bankruptcy case that he is the attorney of record in as of the date of this Order. Mr. Oldham shall state on that list whether arrangements have been made for substituted counsel in each case. Mr. Oldham shall provide this list to the Court within **fourteen (14) days** of the entry of this Order.

**IT IS SO ORDERED.**

---

16. Mr. Oldham may submit these documents to the United States Bankruptcy Court, 300 W. Second St., Ste. 200, Little Rock, Arkansas, 72201.